**STONE & WEBSTER ENGINEERING CORPORATION, Plaintiff,**

v.

**David B. ILSLEY; Robin W. Waller, Workmen's Compensation Commissioner, Second District, State of Connecticut; John A. Arcudi, Chairman, Board of Compensation Commissioners, State of Connecticut; Sprinkler Fitters Union Local 676; and National Automatic Sprinkler Industry Welfare Fund, Defendants.**

**Civ. No. H–80–598.**

United States District Court, D. Connecticut.

Aug. 3, 1981.

Mark E. Fuhrmann, Paul E. Knag, Cummings & Lockwood, Stamford, Conn., for plaintiff.

Christina G. Dunnell, Asst. Atty. Gen., State of Connecticut, Carl R. Ajello, Atty. Gen., Hartford, Conn., for defendants, Robin W. Waller and John A. Arcudi.

Carter LaPrade, Thompson, Weir & Barclay, New Haven, Conn., Sally M. Armstrong, O'Donoghue & O'Donoghue, Washington, D.C., for defendant, Nat'l Automatic Sprinkler Industry Welfare Fund.

Norman Zolot, Hamden, Conn., for defendant, Sprinkler Fitters Union Local 676.

### RULING ON MOTIONS TO DISMISS AND CROSS–MOTIONS FOR SUMMARY JUDGMENT

CLARIE, Chief Judge.

The defendants' motions to dismiss were made pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure and the cross-motions of the parties for summary judgment are before the Court pursuant to Rule 56 of the Federal Rules of Civil Procedure. The principle issue before the Court, aside from the question of jurisdiction, is whether a Connecticut statute, which regulates the duration of payments made by an employer to an employee union welfare fund, is preempted by the Employee's Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001–1381. The fund is part of an employee's union benefit plan, as described in ERISA. The Court finds that it has subject matter jurisdiction and that the state statute interferes with a voluntary, social insurance program. Said program is part of a complex scheme of benefits which was established through collective bargaining. The Court finds that regulatory interference by the state is impermissible, in that the state statute is preempted by ERISA.

### Jurisdiction

The defendants, Waller, Arcudi, Ilsley, and Sprinkler Fitters Union Local 676 have challenged the Court's jurisdiction in this case. They claim that only participants, beneficiaries, or fiduciaries are authorized to bring such an action. *See* 29 U.S.C. § 1132. They argue that Stone & Webster Engineering Corporation does not fit into any of these categories. However, this argument is misdirected, inasmuch as the plaintiff has alleged that it is being compelled, pursuant to a state statute, to make certain payments to a welfare fund. These payments represent a burden which is beyond the plaintiff's contractual obligations, as those obligations are stated in a collective bargaining agreement. *See Ilsley*

*v. Stone & Webster Engineering Corp.*, Dec. by Comp. Comm'r (July 18, 1980). The plaintiff claims that the welfare fund mentioned in the agreement is part of an employee benefit plan, and so is not subject to state regulation due to the preemption provision of ERISA. 29 U.S.C. § 1144. The presence of this issue makes it unnecessary to determine, at this time, whether the plaintiff has standing under 29 U.S.C. § 1132. This civil action arises under the Constitution of the United States, and jurisdiction exists pursuant to 28 U.S.C. § 1331. *Billy Jack for Her, Inc. v. New York Coat, Suit, Dress, Rainwear & Allied Workers' Union,* 511 F.Supp. 1180, 1187 (S.D.N.Y. 1981) ("any time a court finds preemption it should conclude that the action arises under federal law ... even in a case where the preemptive federal law provides the plaintiff with no right to relief."). *See T. B. Harms Co. v. Eliscu,* 339 F.2d 823, 827 (2d Cir. 1964).

### Facts

The facts in this case are not in dispute. Defendant Ilsley began his employment with the plaintiff as a sprinkler fitter on January 9, 1979. On January 30, 1979, Ilsley was injured while at work, and thereafter he received Workmen's Compensation benefits from the plaintiff. The latter was bound by a collective bargaining agreement with the employee's union throughout this period. The agreement established various terms and conditions of employment for all sprinkler fitters, including Ilsley. One aspect of the agreement provided that the plaintiff make certain payments to a welfare fund, in order to furnish various life and health insurance benefits for the sprinkler fitter employees. *See* Plaintiff's Exhibit B at art. 19; Plaintiff's Exhibit C. The agreement further provided that the plaintiff's payments to the fund should be

1. 29 U.S.C. § 1002(3).

2. None of the exceptions of 29 U.S.C. § 1144(b) apply in this case. Connecticut General Statutes § 31–51h is not a regulation of "insurance, banking, or securities," simply because it mentions life and health insurance. The statute is facially aimed at employers, and in this case it has a direct bearing on a welfare benefit plan.

at the rate of seventy-five cents per hour "for all hours worked by all employees ...."

The plaintiff claims that, under the terms of the agreement, it need not make the further contributions on behalf of Ilsley, since he can not claim any "hours worked" subsequent to his injury. The defendants counter that a Connecticut statute requires that payments to such a welfare fund must continue even "while the employee is eligible to receive or is receiving workmen's compensation payments ...." Conn.Gen. Stat. § 31–51h. The plaintiff replies that the welfare fund is an "employee benefit plan," as defined by ERISA,[1] and so is shielded from state regulation by the preemption provision of ERISA. 29 U.S.C. § 1144(a).

On July 18, 1980, the Workmen's Compensation Commission considered, and rejected, the plaintiff's argument. The Commissioner found that, in the absence of direct conflict, the state and federal laws operated concurrently. *Ilsley v. Stone & Webster Engineering Corp.*, Dec. by Comp. Comm'r at 7 (July 18, 1980). The plaintiff instituted this suit on October 2, 1980, and alleges that the state law cannot apply to employers who are subject to ERISA, due to the preemption provision of 29 U.S.C. § 1144(a).

### Discussion of the Law

The preemption provision of ERISA is extremely broad in scope. That statute states, in pertinent part,

"Except as provided in subsection (b) of this section,[2] the provisions of this subchapter and subchapter III of this chapter shall supersede *any and all* State laws insofar as they may now or hereafter relate to *any employee benefit plan* described in section 1003(a) of this title and

Rather than an insurance regulation, it is an attempt to control the timing and extent of those employer contributions which serve to provide insurance coverage to employees. Therefore, the exemption of § 1144(b)(2)(A) does not apply in this case. *See contra* Memorandum of Defendants Ilsley and Sprinkler Fitters Local Union at 10–12 (Apr. 8, 1981).

not exempt under section 1003(b) of this title." 29 U.S.C. § 1144(a) (emphasis added).

The Second Circuit has recently held that the legislative history of section 1144(a) "leads us to conclude that the statute is as sweeping as it seems." *Delta Air Lines, Inc. v. Kramarsky,* 650 F.2d 1287 (2d Cir. 1981). This Court will view the issue at bar from the perspective demanded by *Delta.* It is this perspective, in part, which leads the Court to reject, at the outset, any suggestion that section 1144(a) applies more strongly to pensions than to welfare benefit plans. *See contra,* Memorandum of Defendants Waller and Arcudi at 9 (Mar. 30, 1981). Section 1144(a) applies to state laws which relate to any employee benefit plan, and the latter phrase clearly includes *both* employee welfare benefit plan[s]" and "employee benefit pension plan[s]." 29 U.S.C. § 1002(3).

I

■ The first significant issue before the Court is whether the statute at issue, Conn. Gen.Stat. § 31–51h, "relate[s] to" the employee benefit plan maintained by the plaintiff. The defendants argue that section 31–51h "relates to" employers, rather than to the employee benefit plan; that an increase in employer obligations "in no way impacts upon the fund." In looking at the obverse side of this issue, the defendants assert that ERISA "does not purport to establish contribution levels, or even to set guidelines for the basis of contribution levels." The answers to these contentions depend upon an examination of the relevant statutes. The state statute at issue, Conn. Gen.Stat. § 31–51h, states, in pertinent part,

"(a) No employer ... shall cancel or withhold accident and health insurance or life insurance coverage of any employee or his dependents or cease to make payments or contributions at the regular hourly or weekly rate for fulltime employees for each week of disability to an employee's welfare fund as defined in

subsection (h) of section 31–53 while the employee is eligible to receive or is receiving workers' compensation payments pursuant to chapter 568 ...."

It is quite apparent that this statute purports to regulate the duration of employer contributions to employee welfare funds. In the case at bar, the prescribed duration of employer contributions is embodied in a collective bargaining agreement, and as stated therein, employer contributions to the employee welfare fund need not continue while the employee is not actually working. This is not a "remote and peripheral" regulation of the benefit plan. *See American Telephone & Telegraph Co. v. Merry,* 592 F.2d 118, 121 (2d Cir. 1979). Section 31–51h fundamentally and directly alters the employer's negotiated obligations, as they are stated in Article 19 of the plan.[3] The statute therefore regulates the benefits provided under the plan, and so it "relates to" the plan. *Delta Air Lines, Inc. v. Kramarsky,* 650 F.2d 1287, 1303 n.23 (2d Cir. 1981).

The United States Supreme Court has recently addressed the "relates to" issue, and has suggested an approach which seems even broader than that taken by the Second Circuit in *Delta.* The Supreme Court held that it is immaterial that a state statute intrudes indirectly,

"rather than directly, through a statute called 'pension regulation.' ERISA makes clear that even indirect state action bearing on private pensions may encroach upon the area of exclusive federal concern. For purposes of the pre-emption provision, ERISA defines the term State to include: 'a State, or any political subdivision thereof, or any agency or instrumentality of either, which purports to regulate, *directly* or *indirectly,* the terms and conditions of employee benefit plans covered by this title.' 29 U.S.C. § 1144(c)(2) (emphasis added [by the Supreme Court]). ERISA's authors clearly meant to preclude the States from avoiding through form the substance of the pre-emption provision." *Alessi v.*

---

3. The Court notes that the phrase "relates to" does not limit 29 U.S.C. § 1144(a) to those state laws that are directed to ERISA's subject mat-

ter. *Delta Air Lines, Inc. v. Kramarsky,* 650 F.2d 1287, 1303 (2d Cir. 1981).

*Raybestos-Manhattan, Inc.,* —— U.S. ——, ——, 101 S.Ct. 1895, 1907, 68 L.Ed.2d 402 (1981).

Thus, no weight can be given to defendants' claim that section 31–51h regulates "employers" and not "plans."

Similarly, the Court must reject the defendants' argument that section 31–51h is not preempted by ERISA because ERISA "does not purport to establish contribution levels, or even to set guidelines for the basis of contribution levels." Memorandum of Defendant National Automatic Sprinkler Industry Welfare Fund at 9 (Mar. 20, 1981). The Second Circuit, in *Delta*, noted that section 1144(a)

> "was meant to clear away all state laws bearing on benefit plans [even though] many aspects of benefits plans generally, and of welfare benefit plans in particular, will go unregulated under this regime of broad preemption, and that § 514(a) [29 U.S.C. § 1144(a)] may therefore permit abuses that Congress might otherwise have wished to avert." *Delta* at 1304.

Except for various narrow exceptions to its broad brush of preemption, section 1144(a) protects all ERISA employee benefit plans. *Id.* Thus, there is no requirement that this Court identify an ERISA provision which deals specifically with contribution levels.[4] ERISA may not confront the "contribution level" issue at this time, but section 1144(a) has cleared the decks for such provisions, should Congress choose to address this concern in the future.

## II

■ The remaining significant claim of the defendants is that section 31–51h is exempt from preemption because it falls within the exception stated in 29 U.S.C. § 1003(b)(3). This statute excepts plans which are "maintained solely for the purpose of complying with applicable workman's compensation laws . . . ." The Su-

preme Court indicated, in *Alessi*, that this exception must be read most narrowly:

> "the relevant exemption from ERISA's coverage—for plans maintained *solely* for compliance with state workers' compensation laws—has no bearing on the plans involved here, which more broadly serve employee needs as a result of collective bargaining." *Alessi v. Raybestos-Manhattan, Inc.,* —— U.S. ——, —— n.20, 101 S.Ct. 1895, 1906 n.20, 68 L.Ed.2d 402 (1981) (emphasis in original).

The Second Circuit has addressed the exception issue in more detail, and has stated that the policies of section 1003(b)(3) do not apply to state statutes which relate to those plans that are voluntarily provided by the employer.

> "[B]ecause such voluntary programs are typically part of a complex benefits scheme established through collective bargaining, state efforts to regulate them pose a significant risk of conflict with ERISA requirements.
>
> . . . .
>
> Particularly because state law does not compel employers to establish programs of this sort, it would be sensible to say . . . that such programs are not maintained 'solely' to comply with state laws . . . ." *Delta Air Lines, Inc. v. Kramarsky,* 650 F.2d 1287, 1306 (2d Cir. 1981).

Having defined "solely," the Second Circuit stated that the word "plan," as used in section 1003(b)(3),

> "must refer to a benefits program as an integral administrative unit. If an employer, using a single administrative unit, provides disability benefits as a part of a larger welfare scheme, comprising, for example, health insurance as well as disability benefits, then that scheme as a whole constitutes the employer's 'plan.' Because such a plan provides types of benefits that the states cannot permissibly require under § 514(a) [§ 1144(a)], the

---

4. It appears that employer contributions to a welfare fund is one of many areas which Congress, through ERISA, sought to leave solely in the hands of employers and employees. *See, e.g.*, 29 U.S.C. §§ 1022(b), 1102(b). In addition, 29 U.S.C. § 1144(c)(2) indicates that a state law is preempted when it attempts to regulate "the terms and conditions of employee benefit plans covered by this title." Thus, a statute may be invalid if it merely attempts to regulate a protected plan. There is no requirement that ERISA must give explicit approval to a particular term or condition before preemption may be found.

plan could not be said to be maintained 'solely' to comply with state disability insurance laws." *Id.*

Turning to the issues at bar, the Court notes, first, that Conn.Gen.Stat. § 31–51h is not a workers' compensation law. To re-phrase a point made earlier in this discus-sion, *see* note 2 *supra*, the use of the phrase "workers' compensation" in section 31–51h does not, by its mere presence, convert that statute into a Workmen's Compensation statute. *Cf. Standard Oil Co. v. Agsalud*, 633 F.2d 760, 764 (9th Cir. 1980). The stat-ute is, instead, an attempt to intrude upon employer/employee relations and, as such, is properly located in Chapter 557, the "Regulation of Employment" chapter of the Connecticut General Statutes. It bears no meaningful relation to the Connecticut Workmen's Compensation Act, as enunciat-ed in Chapter 568 of the Connecticut Gener-al Statutes.

Second, these contributions are part of a voluntary arrangement between the em-ployer and the employee. Neither section 31–51h nor any other Connecticut statute requires that an employer make contribu-tions to a welfare fund. Section 31–51h merely controls the duration of such pay-ments, once a contribution arrangement is established.

Third, the welfare plan agreement at is-sue is not a "separate" plan, but is rather one part of a complex benefits scheme [5] which was established through collective bargaining. *Delta* at 1306. Any one of these conclusions, and certainly all of them combined, indicate that the defendants can-not avail themselves of the narrow excep-tion provided by section 1003(b)(3).

### Conclusion

Connecticut General Statutes section 31–51h "relates to" the employee benefit plan in this case, and so it is within the preemp-tion provision of 29 U.S.C. § 1144(a). Sec-tion 31–51h is not a Workmen's Compensa-tion law, nor is the plan at issue one which

is maintained solely to comply with state requirements. *See* 29 U.S.C. § 1003(b)(3). Therefore, section 31–51h is not excepted from 29 U.S.C. § 1144(a). Accordingly, this Court finds that section 31–51h of the Con-necticut General Statutes, as to the benefit plan at issue, is preempted by ERISA, 29 U.S.C. §§ 1001–1381. Section 31–51h is, in this context, void under the Supremacy Clause. U.S.Const. art. VI, cl. 2. The plaintiff's motion for summary judgment is granted; the defendants' motions to dismiss and cross-motions for summary judgment are denied.

SO ORDERED.

---

5. The Court notes that there is an "additional federal interest in precluding state inference with labor-management negotiations" when the plan emerges from collective bargaining. *Ales-*

*si v. Raybestos-Manhattan, Inc.*, —— U.S. ——, ——, 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402 (1981).