846 F.2d 1213
 56 USLW 2701, 110 Lab.Cas. P 10,823,
10 Employee Benefits Ca 1204
 LOCAL UNION 598, PLUMBERS & PIPEFITTERS INDUSTRY JOURNEYMEN
& APPRENTICES TRAINING FUND, Plaintiff-Appellant,
v.
J.A. JONES CONSTRUCTION COMPANY; Bechtel Power Corporation;
and Johnson Controls, Inc., Defendants-Appellees.
 No. 85-3894.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 4, 1986.
Decided May 18, 1988.
 
 Hugh Hafer and David Campbell, Hafer, Price, Rinehart & Schwerin, Seattle, Wash., for plaintiff-appellant.
 Ronald F. Garrity, Thelen, Marrin, Johnson & Bridges, San Francisco, Cal., Frederick T. Rasmussen and Paul R. Haerle, Riddell, Williams, Bullitt & Walkinshaw, Seattle, Wash., Patricia C. Williams and John C. Black, Winston & Cashatt, Spokane, Wash., for defendants-appellees.
 Appeal from the United States District Court for the Western District of Washington.
 Before POOLE, NORRIS and BEEZER, Circuit Judges.
 BEEZER, Circuit Judge:
 
 
 1
 Plaintiff, an employee welfare benefit plan, brought this action against the defendant employers alleging a violation of Washington state's "prevailing wage" on public works statute. The Washington statute, Wash.Rev.Code ch. 39.12, requires employers on public works projects to make contributions to employee benefit plans at or above the mandated "prevailing wage" level, regardless of the level of contributions established by employment contract or collective bargaining agreement. The district court held that section 514(a) of the federal Employee Retirement Income Security Act ("ERISA") preempted the Washington statute insofar as it "relates to" an employee benefit plan. We affirm.
 
 
 2
 * Defendants, J.A. Jones Construction Company, Bechtel Power Corporation, and Johnson Controls, Inc.,[1] are contracting companies which performed plumbing and pipefitting work on a Washington Public Power Supply System project near Richland, Washington. Plaintiff, Local Union 598, Plumbers & Pipefitters Industry Journeymen & Apprenticeship Training Fund ("Local Apprenticeship Fund"), is a labor-management apprenticeship and training trust fund.
 
 
 3
 On July 18, 1984, the Local Apprenticeship Fund brought an action in Washington state court alleging a violation of Washington's public works "prevailing wage" statute, Wash.Rev.Code ch. 39.12. The Local Apprenticeship Fund contends that the defendant contractors failed to make apprenticeship training contributions for labor performed by workers of the local union at the minimum level mandated by the state law. Instead, the defendants made contributions to a national apprenticeship training fund at the lesser level established by a collective bargaining agreement with the national union. The Local Apprenticeship Fund seeks the difference between the contributions paid and contributions allegedly due under the state prevailing wage statute.
 
 
 4
 The defendant contractors removed the action to federal district court. After the Local Apprenticeship Fund filed an amended complaint in the district court worded identically to the state court complaint, the defendants moved to dismiss, contending that the state prevailing wage law as it applies to employee benefit plans is preempted by ERISA. The district court granted the motion to dismiss, ruling that the state statute, to the extent it mandates employer contributions at a particular level to employee welfare benefit plans, is preempted by section 514(a) of ERISA, 29 U.S.C. Sec. 1144(a), because the state law "relates to" and "purports to regulate" an employee benefit plan. The Local Apprenticeship Fund appeals.
 
 II
 
 5
 Removal is a question of federal subject matter jurisdiction reviewable de novo. Gould v. Mutual Life Ins. Co., 790 F.2d 769, 771 (9th Cir.), cert. denied, --- U.S. ----, 107 S.Ct. 580, 93 L.Ed.2d 582 (1986). The defendant contractors properly removed this action to federal district court on diversity of citizenship grounds.[2]
 
 
 6
 To be removable on diversity grounds, a case must exhibit complete diversity of citizenship between the plaintiffs and the defendants. See Strawbridge v. Curtiss, 7 U.S. (3 Cranch.) 267, 2 L.Ed. 435 (1806). Furthermore, for diversity removal to be proper, none of the defendants may be a citizen of the state in which the action is brought. 28 U.S.C. Sec. 1441(b).
 
 
 7
 Considering the posture of this case at the time of removal, neither of these two requisites for diversity removal was met. The complaint named one defendant, Wright-Schuchart, Inc., a Washington state corporation, which was not diverse as to the Washington state plaintiff. If a state action includes non-diverse parties, it may not be removed until those parties have been dismissed. American Car & Foundry Co. v. Kettelhake, 236 U.S. 311, 35 S.Ct. 355, 59 L.Ed. 594 (1915); Othman v. Globe Indem. Co., 759 F.2d 1458, 1463 (9th Cir.1985), overruled on other grounds, Bryant v. Ford Motor Co., 832 F.2d 1080, 1082 (9th Cir.1987) (en banc). Moreover, this non-diverse defendant was also a citizen of the state in which the action was brought, thereby precluding removal jurisdiction by virtue of 28 U.S.C. Sec. 1441(b). Because removability is generally determined as of the time of the petition for removal, federal jurisdiction would ordinarily be defeated in this case.
 
 
 8
 However, in Grubbs v. General Elec. Credit Corp., 405 U.S. 699, 92 S.Ct. 1344, 31 L.Ed.2d 612 (1972), the Supreme Court held that a judgment of a district court may be upheld even if there was no right to removal, if the case has been tried on the merits and the federal court would have had original jurisdiction had the case been filed in federal court in the posture it had at the time of the entry of final judgment. See also American Fire & Casualty Co. v. Finn, 341 U.S. 6, 16-17, 71 S.Ct. 534, 541-42, 95 L.Ed. 702 (1951).
 
 
 9
 In this circuit, Grubbs has been made applicable not only to judgments after trials on the merits but also determinations of summary judgment motions which dispose of the merits. See, e.g., Gould, 790 F.2d at 773; Beers v. Southern Pac. Transp. Co., 703 F.2d 425, 427 (9th Cir.1983). Where the plaintiff has made no objection to jurisdiction before judgment and the jurisdictional defect has been cured before the district court by the plaintiff's voluntary action, we see no reason not to apply Grubbs to judgments of dismissal on the merits.
 
 
 10
 In this case, subsequent to removal, but before the judgment of dismissal, the plaintiff Local Apprenticeship Fund stipulated to the dismissal of the non-diverse defendant Wright-Schuchart, Inc. The plaintiff at no time has raised any objection to federal jurisdiction. Hence, although removal was initially improper, the jurisdictional defect was cured before judgment on the merits when the plaintiff voluntarily dropped the party whose presence prevented proper diversity jurisdiction. See 14A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure: Jurisdiction 2d Sec. 3723, at 319 (2d ed. 1985).
 
 
 11
 Accordingly, the district court had jurisdiction to enter judgment.
 
 III
 
 12
 The plaintiff pleads sufficient facts to support its standing to claim damages under the Washington prevailing wage statute. The plaintiff's amended complaint concisely states:
 
 
 13
 1. Plaintiff is a labor-management apprenticeship and training trust.
 
 
 14
 2. Defendants are contractors or subcontractors who performed plumbing or pipefitting work in the Richland, Washington area for the Washington Public Power Supply System.
 
 
 15
 3. Defendants failed to pay costs of apprenticeship as required by RCW 39.12.010(3)(b) and RCW 39.12.020. Plaintiff is entitled to recover from Defendants the costs of apprenticeship, less any sums paid the UA-NCA Training Trust Fund. The exact amount due is not known, but will be proved at time of trial.
 
 
 16
 WHEREFORE, Plaintiff prays for judgment in the amount proved to be due for costs of apprenticeship and for other relief as may be appropriate.
 
 
 17
 Under Federal Rule of Civil Procedure 8(a)(2), a plaintiff need only make "a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint before us in essence makes two allegations: first, Washington requires contractors to pay apprenticeship costs; second, plaintiff is entitled to recover such costs from the defendant contractors. There is no material difference between these allegations and those in a complaint stating that plaintiff delivered services to defendant and defendant failed to pay for the services rendered. The plaintiff has standing because it seeks relief for an actual injury which is fairly traceable to the defendants' allegedly unlawful conduct and is likely to be redressed by the requested relief. See Allen v. Wright, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984).
 
 IV
 
 18
 Washington Revised Code chapter 39.12 is a "prevailing wage" statute applicable to all public works projects by the state, or any county, municipality, or political subdivision. Wash.Rev.Code Sec. 39.12.020. Persons contracting for the construction of any public work must agree to pay the prevailing wage in that locality to their employees. Id. Sec. 39.12.030-040.
 
 
 19
 The Washington statute is patterned after the federal Davis-Bacon Act, 40 U.S.C. Sec. 276a et seq., which applies to federal public works projects. Southeastern Washington Bldg. & Constr. Trades Council v. Department of Labor & Indus., 91 Wash.2d 41, 44, 586 P.2d 486, 488 (1978). Like the Davis-Bacon Act, the Washington prevailing wage statute is intended to "provide protection to local craftsmen who were losing work because contractors engaged in the practice of recruiting labor from distant cheap labor areas." 91 Wash.2d at 45, 586 P.2d at 488.
 
 
 20
 Under the Washington statute, wages paid to laborers, workmen, or mechanics by public works contractors "shall be not less than the prevailing rate of wage for an hour's work in the same trade or occupation in the locality within the state where such labor is performed." Wash.Rev.Code Sec. 39.12.020. This "prevailing rate of wage" is defined as "the rate of hourly wage, usual benefits, and overtime paid in the locality" to a "majority" of those in the same occupation or trade. Id. Sec. 39.12.010(1).[3]
 
 
 21
 "Usual benefits" consist of (1) "[t]he rate of contribution irrevocably made by a contractor ... to a trustee or to a third person pursuant to a fund, plan, or program," id. Sec. 39.12.010(3)(a), and (2) "[t]he rate of costs to the contractor ... which may be reasonably anticipated in providing benefits to workmen, laborers, and mechanics pursuant to an enforceable commitment to carry out a financially responsible plan or program ... for defraying costs of apprenticeship or other similar programs," id. Sec. 39.12.010(3)(b).
 
 
 22
 The state statute does not directly establish the prevailing rate of wage in a particular locality. An industrial statistician from the Washington Department of Labor and Industries determines what the prevailing wage is with respect to each trade and occupation based upon surveys of area wages and benefits. See id. Sec. 39.12.015. The industrial statistician's calculation of the prevailing wage in the area must include a component for "usual benefits" that are paid in the local area, including provision of apprenticeship training benefits.
 
 
 23
 Plaintiff Local Apprenticeship Fund alleges that the defendant contractors are in violation of the Washington statute by failing to pay the full prevailing rate of costs for apprenticeship training as required pursuant to Washington Revised Code Sec. 39.12.010(3)(b). For purposes of the well-pleaded complaint rule applicable to motions to dismiss, the defendant contractors do not contest that the Washington statute compels employers to make contributions to local employee welfare plans and establishes the level at which such contributions must be made.
 
 V
 
 24
 The Employee Retirement Income Security Act ("ERISA")[4] of 1974 is a comprehensive remedial statute "designed to protect the interest of employees in pension and welfare plans, and to protect employers from conflicting and inconsistent state and local regulation of such plans." Scott v. Gulf Oil Corp., 754 F.2d 1499, 1501 (9th Cir.1985) (citations omitted).
 
 
 25
 The interests of employees are protected through substantive requirements imposed upon pension plans relating to participation, funding, and vesting, 29 U.S.C. Secs. 1051-1086, and through uniform procedural standards for reporting, disclosure, and fiduciary responsibilities for both pension and welfare plans, 29 U.S.C. Secs. 1021-1031, 1101-1114. The promotion of uniform standards and regulations of employee benefit plans is achieved through preemption, with a few exceptions, of all state laws relating to such plans. Scott, 754 F.2d at 1501.
 
 
 26
 Section 514(a) of ERISA, as codified at 29 U.S.C. Sec. 1144(a), provides that "the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title."[5]
 
 
 27
 The Local Apprenticeship Fund is concededly an "employee benefit plan" covered by the preemption clause of section 514(a). Since the fund is established to provide "apprenticeship or other training programs," it is an "employee welfare benefit plan" within the meaning of ERISA section 3(1), 29 U.S.C. Sec. 1002(1).
 
 
 28
 Section 514(b) excludes specified types of state laws, primarily insurance, banking, securities, and generally applicable criminal laws, from the preemption clause. 29 U.S.C. Sec. 1144(b).[6] None of those exceptions apply in this case.
 
 
 29
 The sole focus of our analysis, then, is the effect upon Washington Revised Code chapter 39.12 of the sweeping language in section 514(a), which the Supreme Court has described as a "virtually unique pre-emption provision." Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 24 n. 26, 103 S.Ct. 2841, 2854 n. 26, 77 L.Ed.2d 420 (1983). Preemption is a question of federal law involving statutory interpretation which we review de novo. Nevill v. Shell Oil Co., 835 F.2d 209, 211 (9th Cir.1987).
 
 
 30
 Washington's prevailing wage statute as applied in this case is preempted if it both "relate[s]" to an ERISA plan and "purport[s] to regulate, directly or indirectly" employee benefit plans. Martori Bros. Distribs. v. James-Massengale, 781 F.2d 1349, 1356 (9th Cir.), amended, 791 F.2d 799 (9th Cir.), cert. denied, --- U.S. ----, 107 S.Ct. 435, 93 L.Ed.2d 385 (1986).
 
 
 31
 "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96-97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983) (footnote omitted). A law "purports to regulate" a plan if it attempts "to reach in one way or another the 'terms and conditions of employee benefit plans.' " Lane v. Goren, 743 F.2d 1337, 1339 (9th Cir.1984) (quoting 29 U.S.C. Sec. 1144(c)(2)). The narrower "purports to regulate" test is included within the broader "relates to" test. Martori Bros. Distributors, 781 F.2d at 1359. Thus a finding that a statute "purports to regulate" an employee benefit plan necessarily includes a finding that it "relates to" such a plan.[7]
 
 
 32
 In Martori Bros. Distributors, we identified four categories of state laws which have been held preempted by section 514(a) because they "relate to" ERISA plans:
 
 
 33
 First, laws that regulate the type of benefits or terms of ERISA plans. Second, laws that create reporting, disclosure, funding, or vesting requirements for ERISA plans. Third, laws that provide rules for the calculation of the amount of benefits to be paid under ERISA plans. Fourth, laws and common-law rules that provide remedies for misconduct growing out of the administration of the ERISA plan.
 
 
 34
 781 F.2d at 1357 (listing cases).
 
 
 35
 The Washington prevailing wage statute, Wash.Rev.Code ch. 39.12, falls within the second category: laws that create funding requirements for employee benefit plans. Statutes regulating contributions to ERISA plans have consistently been held preempted. See, e.g., Hewlett-Packard Co. v. Barnes, 425 F.Supp. 1294, 1297-1300 (N.D.Cal.1977) (California statute regulating funding and disclosure of health care service plans preempted by ERISA), aff'd, 571 F.2d 502 (9th Cir.), cert. denied, 439 U.S. 831, 99 S.Ct. 108, 58 L.Ed.2d 125 (1978); Stone & Webster Eng'g Corp. v. Ilsley, 518 F.Supp. 1297, 1299-1301 (D.Conn.1981) (Connecticut statute mandating contributions to employee benefit plans under certain circumstances held preempted by ERISA), aff'd, 690 F.2d 323 (2d Cir.1982), aff'd mem. sub nom. Arcudi v. Stone & Webster Eng'g Corp., 463 U.S. 1220, 103 S.Ct. 3564, 77 L.Ed.2d 1405 (1983).
 
 
 36
 However, the Local Apprenticeship Fund contends that state laws, such as the Washington prevailing wage statute, which relate to contributions rather than the composition or administration of benefits, do not "relate to" or "purport to regulate" employee benefit plans.[8] This "contribution/benefit" dichotomy, while perhaps superficially appealing, is unsupported by the law.
 
 
 37
 In Stone & Webster Eng'g Corp. v. Ilsley, a federal district court held that a Connecticut statute which required an employer to continue payments to employee welfare funds for a former employee receiving workers' compensation due to a job related injury was preempted by ERISA. The court expressly rejected a similar argument that ERISA does not purport to establish contribution levels for plans, and thus a state statute mandating continuation of contributions did not "relate to" an employee benefit plan. 518 F.Supp. at 1300-01. The court held that the challenged Connecticut statute "fundamentally and directly alters the employer's negotiated obligations." Id. at 1300. As such, the statute indirectly regulated the very benefits provided under the employee benefit plan. Id. In affirming the district court, the Second Circuit ruled that the purpose of the Connecticut law was "to add an additional statutory requirement--the cost of which is to be borne by the employer--to a private employee benefit plan," and thus the statute was clearly preempted by ERISA. Stone & Webster Eng'g Corp. v. Ilsley, 690 F.2d 323, 329 (2d Cir.1982), aff'd mem. sub nom. Arcudi v. Stone & Webster Eng'g Corp., 463 U.S. 1220, 103 S.Ct. 3564, 77 L.Ed.2d 1405 (1983).
 
 
 38
 This analysis applies with equal force to the Washington prevailing wage statute insofar as it mandates a particular level of contributions by employers to employee benefit plans. Employer contributions are the fuel for benefit plans, such as the plaintiff Local Apprenticeship Fund. Without employer contributions, there can be no functioning ERISA plans. A statute which mandates employer contributions to benefit plans and which effectively dictates the level at which those required contributions must be made has a most direct connection with an employee benefit plan. As the district court concluded, "[T]he rate of contribution rests at the very core of ERISA's consideration."
 
 
 39
 The Local Apprenticeship Fund still contends that State statutes regulating contributions by employers to "employee welfare benefit plans," Sec. 3(1), 29 U.S.C. Sec. 1002(1), (as opposed to "employee pension benefit plans," Sec. 3(2), 29 U.S.C. Sec. 1002(2)), are not preempted by ERISA because Congress did not purport to regulate the obligation to make contributions to welfare plans.[9] Although ERISA establishes minimum standards with regard to funding of pension plans, 29 U.S.C. Secs. 1081-86, those provisions are inapplicable to welfare plans, including apprenticeship trusts.
 
 
 40
 However, it is not necessary to identify a specific ERISA provision that conflicts with a challenged State law. See generally Kilberg & Inman, Preemption of State Laws Relating to Employee Benefit Plans: An Analysis of ERISA Section 514, 62 Tex.L.Rev. 1313, 1315-16, 1321-24 (1984). Section 514(a) "was meant to clear away all state laws bearing on benefit plans ... [even though] many aspects of benefit plans generally, and of welfare benefit plans in particular" remain unregulated by ERISA. Delta Air Lines, Inc. v. Kramarsky, 650 F.2d 1287, 1304 (2d Cir.), vacated in part on other grounds, 666 F.2d 21 (2d Cir.1981), aff'd in part, vacated in part sub nom. Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). "ERISA may not confront the 'contribution level' issue at this time, but section [514(a) ] has cleared the decks for such provisions, should Congress choose to address this concern in the future." Stone & Webster Eng'g Corp., 518 F.Supp. at 1301.
 
 
 41
 Furthermore, preemption of state laws regulating employer contributions to employee welfare plans serves the Congressional purpose of "eliminating the threat of conflicting or inconsistent State and local regulation of employee benefit plans." 120 Cong.Rec. 29,933 (1974) (remarks of Sen. Williams)[10] (quoted in Shaw, 463 U.S. at 99, 103 S.Ct. at 2901). This is particularly important in circumstances where, as in this case, employers have entered into collective bargaining agreements with national unions to make payments into inter-state employee benefit plans. State interference with such national arrangements is foreclosed by the ERISA preemption clause.
 
 
 42
 As Senator Javits explained during the legislative debate over ERISA, "[T]he emergence of a comprehensive and pervasive Federal interest and the interests of uniformity with respect to interstate plans required ... the displacement of State action in the field of private employee benefit programs." 120 Cong.Rec. 29,942 (1974) (remarks of Sen. Javits)[11] (quoted in Shaw, 463 U.S. at 99-100 n. 20, 103 S.Ct. at 2901 n. 20).
 
 
 43
 Finally, the Local Fund argues that state labor laws that govern working conditions and labor costs are a traditional area of state authority, and thus should not be regarded as preempted.
 
 
 44
 In order to avoid preemption, it is not sufficient that a state statute represent the exercise of a traditional state power. Gilbert v. Burlington Indus., Inc., 765 F.2d 320, 327 (2d Cir.1985), aff'd mem., 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 558 (1986) & aff'd mem. sub nom. Roberts v. Burlington Indus., Inc., 477 U.S. 91, 106 S.Ct. 3267, 91 L.Ed.2d 558 (1986). A purported fundamental state interest is relevant only when there is an element of uncertainty as to whether the challenged state law falls within the scope of the ERISA preemption clause. In cases of uncertainty, our analysis is guided by a rebuttable "presum[ption] that Congress did not intend to pre-empt areas of traditional state regulation." See Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 740, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985).
 
 
 45
 However, the strength of the state interest is of no consequence where the state law clearly "purports to regulate" an employee benefit plan. "In order to avoid being preempted, a state law in addition to being an exercise of traditional police powers must also affect the plan 'in too tenuous, remote, or peripheral a manner to warrant a finding that the law "relates to" the plan.' " Gilbert, 765 F.2d at 327 (quoting Shaw, 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21). Such assuredly is not the case here.
 
 VI
 
 46
 In conclusion, the clear and express purpose of Washington Revised Code Sec. 39.12.010(3) is to govern employer contributions to employee benefit plans, including apprenticeship training plans. The statute on its face "purports to regulate" employee benefit plans. Accordingly, we hold that, to the extent the Washington prevailing wage statute requires employers to maintain a certain level of contributions to employee benefit plans, it is preempted by section 514(a).
 
 
 47
 AFFIRMED.
 
 
 
 [1]
 The present status of Johnson Controls, Inc. in this litigation is somewhat unclear. The district court's order of dismissal in favor of the defendants names only Bechtel Power Corporation and J.A. Jones Construction Company. The district court's order mistakenly states that all other defendants had been dismissed with prejudice by stipulation. In fact, a third defendant, Johnson Controls, Inc., had not been so dismissed
 However, the district court's order dismissed the entire action with prejudice. The plaintiff has not contended that Johnson Controls, Inc. was not included in that dismissal. No separate issues of law or fact have been raised that pertain only to Johnson Controls, Inc. Johnson Controls, Inc. has joined with the other two defendants in appellees' briefs before this court. We assume therefore that the dismissal by the district court applies with full force against all three remaining defendants.
 
 
 [2]
 After the defendant contractors had removed this action, the plaintiff Local Apprenticeship Fund filed an amended complaint in district court. Because this complaint was worded identically to the state court complaint which had been removed, the amendment has no effect upon our jurisdictional inquiry
 
 
 [3]
 "In the event that there is not a majority in the same trade or occupation paid at the same rate, then the average rate of hourly wage and overtime paid to such laborers, workmen, or mechanics in the same trade or occupation shall be the prevailing rate." Wash.Rev.Code Sec. 39.12.010(1)
 
 
 [4]
 Pub.L. No. 93-406, 88 Stat. 829 (1974), as amended, (codified in scattered sections of 5, 18, 26, 29 & 31 U.S.C.)
 
 
 [5]
 Section 514(c)(2) defines the term "State" to include "a State, any political subdivisions thereof, or any agency or instrumentality of either, which purports to regulate, directly or indirectly, the terms and conditions of employee benefit plans covered by this subchapter." 29 U.S.C. Sec. 1144(c)(2) (emphasis added)
 Section 514(c)(1) defines "State law" to include "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." 29 U.S.C. Sec. 1144(c)(1).
 
 
 [6]
 Section 514(b)(6) also excepts state insurance regulations which apply to a "multiple employer welfare arrangement." 29 U.S.C. Sec. 1144(b)(6). The Local Apprenticeship Fund involved in this case would likely fall outside of this exception because "multiple employer welfare arrangement" is defined to exclude any plan or arrangement established pursuant to a collective bargaining agreement. See Sec. 3(40)(A), 29 U.S.C. Sec. 1002(40)(A). At any rate, the Local Apprenticeship Fund has not alleged before this court or the district court that this preemption exception applies
 
 
 [7]
 One commentary explained the basis for the two-prong test for ERISA preemption in this manner:
 Section 514(a) preempts laws of a "State," which section 514(c)(2) defines as an instrumentality "which purports to regulate, directly or indirectly, the terms and conditions of employee benefit plans...." Thus, the term "State" either informs the meaning of "relate to" or imposes independent requirements of its own. In either event, a state law is not preempted unless it regulates an employee benefit plan "directly or indirectly."
 Kilberg & Inman, Preemption of State Laws Relating to Employee Benefit Plans: An Analysis of ERISA Section 514, 62 Tex.L.Rev. 1313, 1325 (1984) (emphasis deleted) (footnote omitted).
 
 
 [8]
 The Local Apprenticeship Fund relies principally upon Sasso v. Vachris, 66 N.Y.2d 28, 494 N.Y.S.2d 856, 484 N.E.2d 1359 (1985), for this proposition. However, the "contribution/benefit" dichotomy which the plaintiff postulates is entirely absent from the analysis in the Sasso decision
 In Sasso, the New York Court of Appeals considered whether ERISA preempted a New York statute which provided a cause of action against stockholders of closely held corporations for delinquent contributions for employee benefits. In holding the statute not preempted, the court emphasized that the New York statute was merely a supplemental remedial provision "by which plaintiffs can recover delinquent contributions already due and owing to them pursuant to the corporation's obligations under the collective bargaining and trust agreements." 66 N.Y.2d at 33, 494 N.Y.S.2d at 859, 484 N.E.2d at 1362. The court went on to explain that "the only effect of [the state statute] on employee benefit plans is to give plaintiffs a cause of action to recover payments the corporation was already obligated to provide." 66 N.Y.2d at 34, 494 N.Y.S.2d at 859, 484 N.E.2d at 1362.
 By contrast, the Washington prevailing wage statute imposes an additional substantive mandate upon employers by requiring them to make contributions at a higher level not established by collective bargaining agreement or by the terms of the employee benefit plan.
 Moreover, the Sasso decision is of doubtful validity. Two federal district courts considering a similar New York cause of action against corporate directors and officers squarely held that ERISA preempts liability shifting provisions when relied upon in a state action to collect delinquent contributions. Trustees of Sheet Metal Workers' Int'l Ass'n Production Workers' Welfare Fund v. Aberdeen Blower and Sheet Metal Workers, Inc., 559 F.Supp. 561, 562-63 (E.D.N.Y.1983); Calhoon v. Bonnabel, 560 F.Supp. 101, 109-110 (S.D.N.Y.1982); see also Baker v. Caravan Moving Corp., 561 F.Supp. 337, 342 (N.D.Ill.1983) (Illinois wage and collection statute insofar as it requires employer contributions to employee benefit plans is preempted by ERISA). The Second Circuit approved of these district court rulings in a decision holding that state wage collection statutes are preempted insofar as they permit a cause of action against employers for delinquent benefits. Gilbert v. Burlington Indus., Inc., 765 F.2d 320, 327-28 (2d Cir.1985), aff'd mem., 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 558 (1986) & aff'd mem. sub nom. Roberts v. Burlington Indus., Inc., 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 558 (1986).
 
 
 [9]
 Although the particular fund involved in this case is a welfare plan, we note that Washington Revised Code Sec. 39.12.010(3) does not limit the term "usual benefits" included in the "prevailing rate of wage" to what would constitute "employee welfare plans" under ERISA. "Usual benefits" is also defined as including "the rate of costs ... which may be reasonably anticipated in providing benefits ... for ... pensions on retirement or death." Wash.Rev.Code Sec. 39.12.010(3)(b)
 
 
 [10]
 Reprinted in Subcomm. on Labor of the House Comm. on Labor and Public Welfare, 94th Cong., 2d Sess., Legislative History of the Employee Retirement Income Security Act of 1974, at 4745 (1976)
 
 
 [11]
 Reprinted in ERISA Legislative History, at 4670