**BOISE CASCADE CORPORATION, a Delaware corporation, BE & K Construction Company, a Delaware corporation, Charles L. Lee, Relco Unisystems Corporation, a Minnesota corporation, Forrest Dahmes, Mid–States Mechanical Services, Inc., a Minnesota corporation, and Kristine Southard, Appellants,**

v.

**Kenneth PETERSON, Commissioner of the Department of Labor and Industry, State of Minnesota, Appellee,**

and

**Minnesota Mechanical Contractors Association, Intervenor.**

No. 90–5238.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 8, 1990.

Decided July 29, 1991.

David P. Pearson, St. Paul, Minn. and Lowell J. Noteboom of Minneapolis, Minn., argued, for appellant Relco Unisystems Corp.; David P. Pearson, St. Paul, Minn. and Lowell J. Noteboom and Robert P. Thavis of Minneapolis, Minn., on the brief.

Scott R. Strand, St. Paul, Minn., argued, for appellee; Hubert H. Humphrey, III and Scott R. Strand, St. Paul, Minn., on the brief.

Marshall H. Tanick, argued, for intervenor/appellee Minnesota Mechanical Contractors Ass'n; Marshall H. Tanick and Teresa J. Ayling of Minneapolis, Minn. on the brief.

Before McMILLIAN, WOLLMAN and BEAM, Circuit Judges.

McMILLIAN, Circuit Judge.

Plaintiffs Boise Cascade Corp., BE & K Construction Co. (BE & K), Charles L. Lee, Relco Unisystems Corp., Forrest Dahmes, Mid–States Mechanical Services, Inc., and Kristine Southard appeal from a final order entered in the District Court for the District of Minnesota granting summary judgment in favor of Kenneth Peterson, Commissioner of the Minnesota Department of Labor and Industry. The district court

held that a state rule [1] regulating the ratio of licensed pipefitters to apprentices working on Minnesota jobsites was not preempted by either the Employee Retirement Income Security Act, as amended, 29 U.S.C. §§ 1001–1381 (ERISA), or the National Labor Relations Act, as amended, 29 U.S.C. §§ 157–158 (NLRA). *Boise Cascade Corp. v. Peterson*, 735 F.Supp. 1434 (D.Minn. 1990) (memorandum and order). For reversal, plaintiffs argue the district court erred in holding that the state rule was not preempted by ERISA, the NLRA or both. For the reasons discussed below, we reverse the order of the district court.

The underlying facts are not disputed. The following background information is taken in large part from the memorandum opinion of the district court.

This case arises out of the efforts of the state of Minnesota to regulate the training of pipefitter apprentices.[2] Minnesota has regulated high-pressure pipefitting (formerly known as steamfitting) since 1937. *See* Minn.Stat. §§ 326.46–.52 and Minn.R. pt. 5230. High-pressure pipefitting is a very dangerous activity; most of the work is not visible when residential or commercial construction is completed, and poor work can cause explosions. The state's regulatory scheme includes both an extensive technical code establishing minimum requirements for the design, testing and installation of high-pressure piping and provisions for the licensing of pipefitters. There are two types of pipefitter licenses: contracting steamfitters and journeymen steamfitters. Only licensed pipefitters and apprentices working under the supervision of a licensed pipefitter can install high-pressure piping. "Contracting steamfitters" are qualified to plan and oversee the installation of high-pressure piping and to employ journeymen steamfitters. "Journeymen steamfitters" can install high-pres-

sure piping in the employ of a contracting steamfitter. Unlicensed apprentices work under the supervision of licensed pipefitters. However, apprentices must either register with the state code enforcement division or enroll in an apprenticeship training program approved by the state division of voluntary apprenticeship. The state division of voluntary apprenticeship approves only those programs that meet certain minimum standards. As early as 1946, these minimum standards included a minimum jobsite ratio of journeymen to apprentices. Since 1973, the minimum standards have specified no more than one journeyman for the first apprentice and then three journeymen for each additional apprentice on the jobsite. The minimum standards also require 4 years of vocational education. Many collective bargaining agreements contained the minimum jobsite ratios of journeymen to apprentices.

Some non-union employers have established their own pipefitter apprenticeship programs outside the control of the state division of voluntary apprenticeship. These programs do not require a minimum jobsite ratio of journeymen to apprentices. Instead each employer determines the ratio of journeymen to apprentices for each jobsite according to the complexity of the work at that jobsite and the experience and ability of the particular individuals available. However, in general, the ratio of journeymen to apprentices on non-union jobsites is substantially lower than the 3 to 1 ratio specified by collective bargaining agreements and the state division of voluntary apprenticeship. Employers who hire apprentice pipefitters do not have to establish an apprentice training program, but all apprentices must be registered with the state code enforcement division (which keeps track of apprentices' on-the-job expe-

---

**1.** The minimum ratio rule, as amended, provides in part:
    All persons learning the trade of pipefitting shall be under the direct supervision of a contracting or journeyman pipefitter. The minimum ratio of pipefitter trainees to licensed pipefitters on the jobsite shall be:
    A. One pipefitter trainee for the first licensed pipefitter; and

    B. One pipefitter trainee for every additional three licensed pipefitters after that; provided that at least one journeyman or contracting pipefitter must be on the jobsite at all times when work is·in progress.
Minn.R. pt. 5230.0110, subpt. 2a (1990).

**2.** The amended rules refer to apprentices as pipefitter trainees.

rience) and must take the licensing exam after 4 years of experience.

Until 1985–1986 almost all pipefitter apprentices were trained in programs where the jobsite ratio of journeymen to apprentices was at least 3 to 1. However, in the mid-to-late 1980s more non-union employers began establishing apprenticeship training programs which did not comply with the voluntary apprenticeship program minimum standards, particularly the 3 to 1 ratio of journeymen to apprentices. The state department of labor and industry questioned whether pipefitter apprentices working for non-union employers were receiving adequate training or working under adequate supervision. The state's concern was exacerbated by Boise Cascade's selection of a non-union contractor (BE & K) as general contractor for the $535 million expansion of its manufacturing facility located in International Falls, MN.

In May 1988 the commissioner of the state department of labor and industry initiated rulemaking proceedings on pipefitter apprenticeship training standards. In June 1989 the state department of labor and industry published a proposed rule adopting the 1 to 1 and 3 to 1 ratios for journeymen and apprentice pipefitters on the jobsite. After an administrative hearing, a state administrative law judge found that the state department of labor and industry had demonstrated a need for the minimum jobsite ratio rule and that the rule was rationally related to its ends. The proposed rule was adopted on January 22, 1990, to be effective on February 1, 1990. The rule did not contain a grandfather clause exempting construction projects already in progress on the effective date. The state had argued that the minimum jobsite ratios were necessary because of the grave danger to the public posed by the improper installation of high-pressure piping and the inadequacy of the training and supervision received by apprentices working for non-union employers.

On January 23, 1990, plaintiffs filed this action in federal district court seeking a declaration that the minimum jobsite ratio rule was preempted by ERISA and the NLRA and to enjoin implementation of the minimum jobsite ratio rule. On January 31, 1990, the district court granted a temporary restraining order (TRO)[3] against enforcement of the minimum jobsite ratio rule and, with the consent of the parties, consolidated the motions for preliminary and permanent injunctive relief and referred the consolidated motions for injunctive relief, as well as the state's motion for summary judgment, to a magistrate judge for a hearing and report and recommendation. The magistrate judge recommended granting summary judgment in favor of the state, and plaintiffs filed objections.

The district court granted summary judgment in favor of the state and denied plaintiffs' consolidated motions for preliminary and permanent injunctive relief. The district court held that the minimum jobsite ratio rule was not preempted by either ERISA or the NLRA. 735 F.Supp. at 1438–43. The district court held that ERISA did not preempt the minimum jobsite ratio rule because the rule was one "of general application concerning [occupational training and public safety,] ... subject[s] traditionally reserved to the states[,] which has no implications for ERISA's regulatory concerns and only an incidental effect on the administration of training programs.... [and which] in no way threatens the administrative integrity of employee benefit plans." *Id.* at 1441. The district court also held that the NLRA did not preempt the minimum jobsite ratio rule because the rule did not interfere with either the primary jurisdiction of the National Labor Relations Board over what is and what is not an unfair labor practice, *id.* at 1442, *citing San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), or the collective bar-

---

**3.** The state appealed the issuance of the TRO, arguing that the TRO was in fact a preliminary injunction and therefore immediately appealable under 28 U.S.C. § 1291(a). We disagreed with the state, held that the district court's order was a TRO and not a preliminary injunction, and accordingly dismissed the appeal for lack of jurisdiction. *Boise Cascade Corp. v. Peterson,* 902 F.2d 1577 (8th Cir. Mar. 30, 1990) (order).

gaining process. 735 F.Supp. at 1442–43, *citing Lodge 76, International Ass'n of Machinists v. Wisconsin Employment Relations Comm'n,* 427 U.S. 132, 96 S.Ct. 2548, 49 L.Ed.2d 396 (1976).

The district court denied plaintiffs' motion to continue the TRO pending appeal but, in the interests of justice, continued the TRO for 14 days to enable plaintiffs to file an appeal and seek a stay pending appeal from this court. This appeal followed. This court granted plaintiffs' motion for a stay pending appeal, thus continuing in effect the TRO against state enforcement of the minimum jobsite ratio rule, and expedited the appeal.

## STANDARD OF REVIEW

We review summary judgments de novo. *E.g., AgriStor Leasing v. Farrow,* 826 F.2d 732, 734 (8th Cir.1987); *accord Hydrostorage, Inc. v. Northern California Boilermakers Local Joint Apprenticeship Comm.,* 891 F.2d 719, 726 (9th Cir.1989) (*Hydrostorage*), *cert. denied,* —— U.S. ——, 111 S.Ct. 72, 112 L.Ed.2d 46 (1990). In the present case, because the underlying facts are not disputed, the issue is a legal one involving statutory interpretation, that is, whether the state's minimum jobsite ratio rule is preempted by ERISA, the NRLA or both. *See Local Union 598, Plumbers & Pipefitters Industry Journeymen & Apprentices Training Fund v. J.A. Jones Construction Co.,* 846 F.2d 1213, 1218 (9th Cir.) (*Jones*) (ERISA preemption is question of federal law involving statutory interpretation and is reviewed de novo), *aff'd mem.,* 488 U.S. 881, 109 S.Ct. 210, 102 L.Ed.2d 202 (1988).

## ERISA PREEMPTION

For reversal, plaintiffs argue the district court construed the ERISA preemption clause too narrowly. Plaintiffs argue that because the minimum jobsite ratio rule directly affects the administration and cost of their apprenticeship training programs, the rule clearly "relates to" an "employee benefit plan" and is thus preempted. The state argues ERISA does not preempt all state laws that affect employee benefit plans and that the district court correctly followed the analytical framework set forth

in *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987) (*Fort Halifax*). The state argues that the minimum jobsite ratio rule involved occupational training and public safety, two areas of traditional state regulation, and that the effect of the rule on the pipefitter apprenticeship program was "too tenuous, remote and peripheral" to warrant preemption. *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 2901 n. 21, 77 L.Ed.2d 490 (1983). Although we agree with much of the district court's preemption analysis, we think the district court failed to differentiate between a "benefit" and a "plan" and thus underestimated the scope of ERISA preemption.

■ "In determining whether federal law pre-empts a state statute, we look to congressional intent." *FMC Corp. v. Holliday,* —— U.S. ——, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990). "Pre-emption may be either express or implied, and is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. at 95, 103 S.Ct. at 2899 (internal citations omitted). ERISA is "a comprehensive remedial statute 'designed to protect the interest of employees in pension and welfare plans, and to protect employers from conflicting and inconsistent state and local regulation of such plans.'" *Jones,* 846 F.2d at 1217 (internal citation omitted). ERISA contains a very broad preemption clause. Section 514(a) of ERISA, 29 U.S.C. § 1144(a), provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." The Supreme Court has noted that the ERISA preemption clause is "conspicuous for its breadth" and "establishes as an area of exclusive federal concern the subject of every state law that 'relate[s] to' an employee benefit plan governed by ERISA." *FMC Corp. v. Holliday,* 111 S.Ct. at 407. In *Shaw v. Delta Air Lines, Inc.,* 463 U.S. at 96–97, 103 S.Ct. at 2900 (footnote omitted), the Supreme Court held that "[a] [state] law 'relates to' an employee benefit plan, in the

normal sense of the phrase, if it has a connection with or reference to such a plan."

■ As a preliminary matter, we note that the minimum jobsite ratio rule is a "state law" for purposes of ERISA preemption analysis. *See Hydrostorage*, 891 F.2d at 729. Title 29 U.S.C. § 1144(c) defines "state laws" as "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State."

■ We also note that the state has conceded that plaintiffs' pipefitter apprenticeship programs are "employee welfare benefit plans" as defined by ERISA. 735 F.Supp. at 1438; *see* 29 U.S.C. § 1002(1); *Hydrostorage*, 891 F.2d at 728 (concluding that boilermaker apprenticeship standards, which included a maximum ratio of apprentices to journeymen on job locations, were an integral part of a larger "program" established for the purpose of providing "apprenticeship ... training" and thus fell within the definition of an "employee welfare benefit plan" under ERISA). We think the fact that the minimum jobsite ratio rule is part of an apprenticeship program and thus part of an employee benefit "plan" under ERISA, not merely an employee benefit, distinguishes the present case from *Fort Halifax*, a case heavily relied upon by the district court. The difference between a "plan" and a "benefit" was critical to the Supreme Court's decision in *Fort Halifax*. 482 U.S. at 6–8, 107 S.Ct. at 2214–15. In that case the Court concluded that because the Maine severance pay statute created an employee benefit and neither established nor required an employer to maintain an employee welfare benefit "plan," it was not preempted by ERISA because ERISA's preemption provision referred only to state laws relating to "employee benefit plans," not to state laws relating to "employee benefits." *Id.* at 7–8, 107 S.Ct. at 2215, *citing* 29 U.S.C. § 1144(a).

We conclude that the minimum jobsite ratio rule "relates to" employee benefit plans covered by ERISA, that is, plaintiffs' apprenticeship programs, within the meaning of ERISA's § 514(a). *See Hy-*

*drostorage*, 891 F.2d at 729–31. The minimum jobsite rule was specifically designed to affect employee benefit plans. The very purpose of the minimum jobsite ratio rule was to require plaintiffs and other employers to train their apprentices in accordance with the minimum jobsite ratio rule. Application of the minimum jobsite ratio rule would also have exposed plaintiffs and other employers to conflicting or inconsistent state and local regulations. "[W]here a 'patchwork scheme of regulation would introduce considerable inefficiencies in benefit program operation,' [the Supreme Court has] applied the preemption clause to ensure that benefit plans will be governed by only a single set of regulations." *FMC Corp. v. Holliday*, 111 S.Ct. at 408, *citing Fort Halifax*, 482 U.S. at 11, 107 S.Ct. at 2217; *see Shaw v. Delta Air Lines, Inc.*, 463 U.S. at 95–100, 103 S.Ct. at 2898–2902. The fact that the minimum jobsite ratio rule "in no way threatens the administrative integrity of employee benefit plans," as found by the district court, 735 F.Supp. at 1441, is not dispositive. The Supreme Court in *Shaw v. Delta Air Lines, Inc.* rejected the view that the scope of ERISA preemption is limited to "only state laws dealing with the subject matters covered by ERISA—reporting, disclosure, fiduciary responsibility, and the like." 463 U.S. at 98, 103 S.Ct. at 2900; *see also FMC Corp. v. Holliday*, 111 S.Ct. at 408.

TRADITIONAL STATE REGULATION

■ The state argues on appeal that the minimum jobsite ratio rule is "a rule of general application concerning a subject traditionally reserved to the states which has no implications for ERISA's regulatory concerns and only an incidental effect on the administration of training programs." 735 F.Supp. at 1441. The state argues that "Congress did not intend [ERISA] to preempt areas of traditional state regulation." *Metropolitan Life Insurance Co. v. Massachusetts*, 471 U.S. 724, 740, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985). The state defends the minimum jobsite ratio rule as "an occupational training requirement enacted to protect public safety," 735 F.Supp. at 1441, and argues that the rule is

not preempted because it affects the apprenticeship programs in "too tenuous, remote, or peripheral a manner to warrant a finding that the [rule] 'relates to' the plan[s]." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21, *citing American Telephone & Telegraph Co. v. Merry*, 592 F.2d 118, 121 (2d Cir.1979) (garnishment).

We agree that the minimum jobsite ratio rule is an exercise of traditional state regulatory power over occupational training. However, we cannot agree that its effect on the apprenticeship programs is so tenuous, remote or peripheral as to allow us to conclude it does not "relate to" them. The minimum jobsite ratio rule directly affects an ERISA plan: it regulates, and was clearly intended to regulate, certain terms and conditions of the apprenticeship programs by establishing the manner in which employers can train and employ both journeymen and apprentice pipefitters. *See Hydrostorage*, 891 F.2d at 729 (holding state scheme requiring employer participation and contribution to apprenticeship program "related to" ERISA plan); *Jones*, 846 F.2d at 1220–21 (state statute requiring contributions to apprenticeship training fund at rate in excess of that provided by collective bargaining agreement held preempted by ERISA); *Gilbert v. Burlington Industries, Inc.*, 765 F.2d 320, 327–28 (2d Cir.1985) (state wage collection statute which required severance pay held preempted by ERISA), *aff'd mem.*, 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 558 (1986); *cf. Retirement Trust Fund v. Franchise Tax Board*, 909 F.2d 1266, 1280–86 (9th Cir.1990) (state tax collection procedures not preempted by ERISA; however, state tax levy prohibited by ERISA anti-alienation provision); *Aetna Life Insurance Co. v. Borges*, 869 F.2d 142, 145–49 (2d Cir.) (state escheat law not preempted by ERISA), *cert. denied*, — U.S. —, 110 S.Ct. 57, 107 L.Ed.2d 25 (1989).

We hold the minimum jobsite ratio rule is preempted because it "relates to" an ERISA plan. Because we reverse the district court's order on the grounds that the minimum jobsite ratio rule is preempted by ERISA, we need not reach the issue of NLRA preemption.

Accordingly, the order of the district court is reversed.