# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2079

_____

| | | |
|---|---|---|
| Wright Electric, Inc., a Minnesota corporation; William G. Vice, an individual; Billy Joe Porter, | * * * * | |
| Appellants, | * * | |
| v. | * * | |
| Minnesota State Board of Electricity; John Schultz, Executive Secretary of the Minnesota State Board of Electricity; City of W. St. Paul, Minnesota; Richard Bradley, Electrical Inspector of the City of West St. Paul, Minnesota, | * * * * * * * | Appeal from the United States District Court for the District of Minnesota |
| Appellees. | * * * | |
| ------------------------------------------ | * * | |
| International Brotherhood of Electrical Workers, AFL-CIO, | * * * | |
| Amicus of Behalf of Appellees. | * | |

_____

Submitted:  December 9, 2002

Filed:   March 20, 2003

_____

_____

Before McMILLIAN, FAGG and BYE, Circuit Judges.

_____

McMILLIAN, Circuit Judge.

Wright Electric, Inc., and two of its employees, William G. Vice and Billy Joe Porter (collectively Wright Electric), appeal from a final judgment entered in the District Court[1] for the District of Minnesota in favor of the Minnesota State Board of Electricity (board), John Schultz, the executive secretary of the board, City of West St. Paul (city), and Richard Bradley, electrical inspector of the city (collectively the state). The district court rejected Wright Electric's request for declaratory and injunctive relief to bar enforcement of a state statute and rule, holding that they were not preempted by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq. We affirm.

## BACKGROUND

Wright Electric is a licensed Minnesota electrical contractor that performs residential, commercial and industrial electrical work, using both licensed electricians and unlicensed workers. The board is the licensing authority that administers and enforces the Minnesota Electrical Act, Minn. Stat. § 326.01 et seq. The Act prohibits an unlicensed person from performing electrical work at job sites unless he or she is supervised by a licensed electrician. Id. § 326.242, subd. 5(a). The portion of the statute and rule at issue here, Minn. Stat. § 326.242, subd. 5(a) and Minn. R. 3800.3500(11A) (collectively the statute or the supervision ratio requirement), provide that a licensed electrician shall not supervise more than two unlicensed persons at a job site.

_____

[1]The Honorable John R. Tunheim, United States District Judge for the District of Minnesota.

-2-

Since 1989 Wright Electric has had an apprenticeship training program. The program consists of classroom instruction and on-the-job training. The classroom instruction is provided by the Construction Education Foundation (foundation), an educational trust, and the Minnesota Chapter of Associated Builders and Contractors (ABC), a trade association representing construction contractors. ABC promotional materials noted that if companies joined the foundation and paid for employee apprenticeship classroom training through a foundation trust account, they may be able to establish an ERISA plan and thereby be "exempt from [supervision] ratios imposed by state and/or local governments." In 1998, Wright Electric joined the foundation and made quarterly contributions to its trust account. Although Wright Electric made quarterly contributions to its dedicated foundation account, it often ran the account at a deficit. When there was a deficit, the foundation billed Wright Electric for the shortfall and Wright Electric then made a lump sum payment out of its general assets.

The on-the-job training consisted of licensed electricians training and supervising unlicensed apprentices. In March 2000, Wright Electric was performing electrical work at a job site in the city. On March 8, 2000, Bradley cited Vice and Porter, who are licensed electricians, for violating the statute because they were supervising more than two unlicensed apprentices at the job site.

In June 2000, Wright Electric filed an action in the district court seeking declaratory and injunctive relief to bar enforcement of the statute on the ground that it was unenforceable because it was preempted by ERISA. In addition to alleging that the action was based on ERISA, Wright Electric alleged that the action was based on the Supremacy Clause, Article VI, Clause 2, of the United States Constitution. The district court granted the state's motion for summary judgment. The district court first held that it lacked subject matter jurisdiction because Wright Electric's apprenticeship training program was not an ERISA plan. The district court reasoned that the apprenticeship program did not qualify as an ERISA plan because, among other

things, Wright Electric partially funded the program by lump sum payments from its general assets. See Massachusetts v. Morash, 490 U.S. 107, 115 (1989).

Although the district court believed that it did not have subject matter jurisdiction, it nonetheless considered the preemption issue. The district court concluded that ERISA did not preempt the statue, relying, in part, on Willmar v. Elect. Serv., Inc. v. Cooke, 212 F.3d 533 (10th Cir.) (Willmar), cert. denied, 531 U.S. 979 (2000), in which the Tenth Circuit held that ERISA did not preempt a state law prohibiting a licensed electrician from supervising more than one unlicensed person. This appeal follows.

## DISCUSSION

Subject Matter Jurisdiction

Initially, we must resolve whether the district court had subject matter jurisdiction, an issue we decide de novo. An ERISA plan participant, beneficiary, or fiduciary may bring a civil action under 29 U.S.C. § 1132(a)(3) to recover benefits or enforce rights under an employee benefit plan or to enforce ERISA. Wright Electric argues that the district court erred in requiring it to show that its apprenticeship program was an ERISA plan in order to establish subject matter jurisdiction. In Kulinski v. Medtronic Bio-Medicus, Inc., 21 F.3d 254, 256 (8th Cir. 1994) (Kulinski), this court held that "[w]here federal subject matter jurisdiction is based on ERISA, but the evidence fails to establish the existence of an ERISA plan, the claim must be dismissed for lack of subject matter jurisdiction." Wright Electric argues that Kulinski is not controlling. We agree. In Kulinski, the plaintiff, who was seeking severance benefits under an alleged ERISA plan, "base[d] his claim solely on ERISA" and [j]urisdiction likewise [wa]s asserted only on the basis of ERISA." Id. at 258.

-4-

In contrast here, Wright Electric is not seeking enforcement of ERISA or plan terms. Rather, it is seeking to bar enforcement of a state statute. In its complaint, the company asserted that the district court had subject matter jurisdiction under 28 U.S.C. § 1331 because it was seeking declaratory and injunctive relief against state officials from enforcing a state statute on the ground that it was preempted by federal law, in violation of the Supremacy Clause of the United States Constitution. "It is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights." Shaw v. Delta Airlines, Inc., 463 U.S. 85, 96 n.14 (1983) (Shaw). In Shaw, the Supreme Court explained that "[a] plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is preempted by a federal statute which, by virtue of the Supremacy Clause, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve." Id. Indeed, the Court noted that it "frequently ha[d] resolved preemption disputes in a similar jurisdictional posture." Id. (citing e.g., Ray v. Atlantic Ritchfield Co., 435 U.S. 151 (1978); Jones v. Rath Packing Co., 430 U.S. 519, 525 (1977)).

In other words, a "'claim under the Supremacy Clause that a federal law preempts a state regulation is distinct from a claim for enforcement of that federal law.'" Burgio & Campofelice, Inc. v. New York State Dep't of Labor, 107 F.3d 1000, 1007 (2d Cir. 1997) (Burgio) ( quoting Western Air lines, Inc. v. Port Auth., 817 F.2d 222, 225 (2d Cir. 1987)). "The coincidence that the federal law in question in this case contains its own preemption language, 29 U.S.C. § 1144, does not affect this distinction." Id. See also Associated Builders & Contractors Saginaw Valley Area Chapter v. Perry, 115 F.3d 386, 38-89 (6th Cir. 1997) ( holding that even though plaintiff was not an ERISA entity, court had subject matter jurisdiction to consider ERISA preemption issue because plaintiff was seeking "injunctive and declaratory relief from state regulation based on federal question jurisdiction"). Moreover, because its employees have been cited under the statute and the state represents it

consistently enforces the statute, Wright Electric has standing to challenge enforcement of the state statute and rule.  See Burgio, 107 F.3d at 1005.

Preemption

We now turn to the preemption issue.  ERISA preempts "any and all State laws insofar as they may now or hereafter relate to an [ERISA covered] employee benefit plan."  29 U.S.C. § 1144(a).  Wright Electric argues that the district court erred in holding that ERISA did not preempt the statute, relying on Boise Cascade Corp. v. Peterson, 939 F.2d 632 (8th Cir. 1991) (Boise Cascade), cert. denied, 505 U.S. 1213 (1992).  In Boise Cascade, this court held that a state law regulating the supervision ratio of licensed pipefitters to unlicensed persons was preempted by ERISA.  The state argues that the preemption analysis of Boise Cascade is no longer controlling in light of intervening Supreme Court cases, beginning with New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645 (1995) (Travelers).

We agree with the state.  See Southern California IBEW-NECA Trust Funds v. Standard Indus. Elect. Co. 247 F.3d 920, 929 (9th Cir. 2001) (noting "the breadth of federal preemption which governed our decisions prior to Travelers is no longer applicable"); Coyne Delany Co. v. Selman, 98 F.3d 1457, 149 n.14 (4th Cir. 1996) (refusing to follow pre-Travelers preemption cases).  In Boise Cascade, this court began its analysis by noting that "the ERISA preemption clause is conspicuous for its breadth and establishes as an area of exclusive federal concern the subject of every state law that 'relates to' an employee benefit plan governed by ERISA." 939 F.2d at 636 (internal quotation omitted).  A state law "'relates to' an employee benefit plan "if it has a connection with or reference to such a plan."  Id.  (internal quotation omitted). As in this case, in Boise Cascade the preemption issue involved the "connection with" prong of the test.  However, this court has recognized that "'Travelers plainly signaled a significant analytical shift in regard to the "connection

-6-

with" portion of the ERISA preemption inquiry, abandoning strict textualism in favor of more nuanced approach."' Minnesota Chapter of Associated Builders & Contractors, Inc. v. Minnesota Dep't of Public Safety, 267 F.3d 807, 812 (8th Cir. 2001) (Minnesota ABC) (quoting Carpenters Local Union No. 26 v. U.S. Fid. & Guar. Co., 215 F.3d 136, 139-40 (1st Cir. 2000)), cert. denied, 122 S. Ct. 2292 (2002).

In Travelers, the Supreme Court explained that although the "governing text of ERISA is clearly expansive[,] . . . [i]f 'relate to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course." 514 U.S. at 655. "[T]hat, of course," the Court explained "would be to read Congress's words of limitation as mere sham, and to read the presumption against pre-emption out of the law." Id. Thus, the Court concluded that "infinite relations cannot be the measure of pre-emption, neither can be infinite connections." Id. at 656. The Court "recognize[d] that [its] prior attempt to construe the phrase 'relate to' d[id] not give [courts] much help" and that courts "must go beyond the unhelpful text and the frustrating difficulty of defining [the phrase] and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive. " Id. at 655-56. The Court emphasized that in ERISA preemption cases "the starting presumption [is] that Congress does not intend to supplant state law." Id. at 654. The Court went on to hold that a state statute requiring surcharges on bills of patients covered by ERISA health care plans was not preempted by ERISA. The Court reasoned that although the state law had an indirect economic effect on ERISA plans, the impact was too remote. The Court also noted that nothing indicated that in enacting ERISA "Congress chose to displace general health care regulation, which historically has been a matter of local concern." Id. at 661.

Two terms later, in California Div. of Labor Standards Enforcement v. Dillingham Constr., Inc., 519 U.S. 316, 324 (1997) (Dillingham), the Supreme Court recognized that Travelers had rejected an "uncritical literalism" in construing the

"connection with" language. In <u>Dillingham</u>, the Court held that a state prevailing wage law applied to apprenticeship programs was not preempted by ERISA, noting that the law was "quite remote from the areas with which ERISA is expressly concerned – 'reporting, disclosure, fiduciary responsibility, and the like.'" <u>Id.</u> at 330 (quoting <u>Travelers</u>, 514 U.S. at 661). The Court also noted that "[g]iven the paucity of indication in ERISA and its legislative history of any intent on the part of Congress to pre-empt state apprenticeship training standards , or state prevailing wage laws that incorporate them, [it] [was] reluctant to alter [its] 'ordinary 'assumption that the historic police powers of the States were not to be superseded by the Federal Act.'" <u>Id.</u> (quoting <u>Rice v. Santa Fe. Elevator Corp.</u>, 331 U.S. 218, 230 (1947)). Also that term, in <u>DeBuono v. NYSA-ILA Med. Clinical Serv. Fund.</u>, 520 U.S. 806, 815 (1997) (<u>DeBuono</u>), the Court held that a state statute imposing a tax on the income of hospitals operated by ERISA funds was not preempted by ERISA, reasoning that the law was "one of 'myriad of state laws' of general applicability that impose some burdens on the administration of ERISA plans but nevertheless do not 'relate to' them within the meaning of the governing statute."

Thus, "a proper assessment of ERISA preemption now must take into account the limits recently recognized by the [Supreme] Court." <u>Willmar</u>, 212 F.3d at 537. Indeed, in <u>DeBuono</u>, the Court admonished an appellate court for relying "on an expansive and literal interpretation of the words 'relate to' . . . [and] failing to give proper weight to <u>Travelers</u>' rejection of a strictly literal reading of [the phrase]." 520 U.S. at 812-13. Because "<u>Bosie Cascade</u> . . . did not take these limits into account," we do not view it as controlling to the issue now presented. <u>Willmar</u>, 212 F.3d at 537-38.

In this case, the district court heeded the Supreme Court's admonishment. The district court gave proper weight to <u>Travelers</u> and its progeny in the context of consideration of the factors this court deems relevant in an ERISA preemption analysis. The district court considered whether the supervision ratio requirement

negated an ERISA plan provision, affected the relations among ERISA entities, affected the structure and administration of ERISA plans, and had an economic impact on ERISA plans. See Minnesota ABC, 267 F.3d at 816. The district court also considered whether " preemption of the state law is consistent with other ERISA provisions, [and] . . . whether the state law is an exercise of traditional state power." In considering the factors, the district court "looked to the totality of the state statute's impact [on an ERISA] plan – both how many of the factors favor preemption and how heavily each individual factor favors preemption are relevant." Id.

The district court found that several  factors slightly favored preemption, noting that the supervision ratio requirement would  affect plan administration because plans were required to document compliance with the requirement. The district court also noted that the state law would have an indirect economic impact on plans because an apprenticeship program may have to alter the number of apprentices sent to work at a job site to ensure the supervision ratio requirement was met.

However, the district court noted that the statute did not have a direct economic impact nor a direct impact on the structure of an apprentice program because the statute did not dictate the number of hours, training methodology, or benefits, citing Travelers, 514 U.S. at 659 (explaining that "indirect economic influence [] does not bind plan administrators  to any particular choice" and thus does not "function as a regulation of an ERISA plan itself"). Importantly, the district court noted that the supervision ratio requirement was neutral and was intended to protect the health and safety of workers and the public, an area traditionally within the domain of state police powers, emphasizing that in Travelers, the Supreme Court explained that the "historic police powers of the State were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." Id. at 655 9internal quotation omitted); see also Dillingham, 519 U.S. at 331 ("[g]iven paucity of indication in ERISA and its legislative history of any intent on the part of Congress to preempt state apprenticeship training standards . . . we are reluctant to alter our

ordinary assumption" that state law was not preempted) (internal quotation omitted). The district court found no such congressional purpose.

Contrary to Wright Electric's argument, the district court did not err in distinguishing Minnesota ABC. In that case, this court held that a state law that required sprinkler contractors to maintain an approved apprenticeship program was preempted by ERISA. We distinguished Dillingham, in which the Supreme Court held that a prevailing wage law applied to apprenticeship programs was not preempted by ERISA, reasoning that unlike Dillingham, the state law at issue "dictated the choices facing ERISA plans." 267 F.3d at 814 (internal quotation omitted). We noted that the state law required apprenticeship programs to comply with numerous requirements and prevented the use of apprentices who were not registered in approved programs. As the district court pointed out, in Minnesota ABC, this court also distinguished Willmar, in which the Tenth Circuit held that a supervision ratio requirement statute even more restrictive than the one at issue here was not preempted by ERISA. In Minnesota ABC, we noted the supervision ratio requirement in Willmar did "not prevent training," but only "indirectly increase[d] the cost of" doing so," and thus was comparable to the state law at issue in Dillingham. In contrast to Willmar and Dillingham, we noted that the sprinkler apprenticeship statute "act[ed] to actually prevent training." 267 F.3d at 815.

This case is indistinguishable from Willmar, which in Minnesota ABC we endorsed as being consistent with controlling Supreme Court precedent. Thus, the district court did not err in relying on Willmar and holding that the supervision ratio requirement was not preempted by ERISA. As the Tenth Circuit noted in Willmar, "[t]he appropriate degree of supervision required for apprentices performing electrical work is a matter related to occupational and public safety and, as such, has traditionally been subject to the state's police powers." 212 F.3d at 537. The court also noted that, like the wage statute at issue in Dillingham, the supervision ratio statute was "outside the area of ERISA's concerns–i.e., reporting, disclosure and

-10-

fiduciary requirements put in place to protect employee benefits." Id. As did the Tenth Circuit, we find it "implausible that Congress could have intended for such a regulation to be superseded by ERISA because its application has some impact on an ERISA plan." Id. at 538. As the district court noted, "ERISA was not enacted to provide employers with a vehicle to deliberately avoid important health and safety laws." See Shea v. Essensten, 208 F.3d 712, 719 (8th Cir.) (holding ERISA did not preempt state regulation of ethical standards of physicians), cert. denied, 531 U.S. 871 (2000); Boyle v. Anderson, 68 F.3d 1093, 1110 (8th Cir. 1995) (holding ERISA did not preempt state general health care regulations), cert. denied, 516 U.S. 1173 (1996).

Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT

-11-