H. William ATKINS; Robert C. Askeland; Robert I. Bromschwig; Raymond I. Cornforth; George Duggan; Herbert F. Ewald; Stanley V. Gomoll; Stephen Hanto; Claud L. Johnson; Milan K. Johnson; Robert E. Krueger; Earl Lunde; Santino H. Mazzu; Richard S. Ohrbeck; Neil E. Potts; William P. Roberts; Wayne L. Twito; Max Wiley, for and in behalf of themselves and all others similarly situated, Appellants,

v.

NORTHWEST AIRLINES, INC.; Northwest Airlines, Inc., Retirement Plan for Pilot Employees; Air Line Pilots Association, Appellees.

No. 91–3179MN.

United States Court of Appeals, Eighth Circuit.

Submitted May 13, 1992.
Decided June 22, 1992.

nois, convicted in Missouri, and sentenced to a prison term of four years.

Raymond C. Fay, Washington, D.C. (argued), for appellants.

Eric J. Magnuson, Minneapolis, Minn. (argued), for appellees.

Before McMILLIAN, JOHN R. GIBSON, and MAGILL, Circuit Judges.

MAGILL, Circuit Judge.

Appellant pilots appeal the district court's grant of summary judgment against them on various age discrimination claims relating to Northwest Airlines, Inc.'s pension plan. The district court[1] found that Northwest's pilot pension plan did not violate statutory prohibitions on age discrimination in pension accrual. We affirm.

I.

Appellants are seventeen current or retired Northwest pilots who worked past the airline's normal retirement age of sixty as flight engineers. The Federal Aviation Administration bars airlines from employing persons over the age of sixty as captains or first officers on commercial aircraft. 14 C.F.R. § 121.383(c) (1991) (the age sixty

---

1. The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

rule).[2] Therefore, pilots who choose to work past the normal retirement age of sixty must work as flight engineers on the aircraft.[3]

Appellants claim on various grounds that the Retirement Plan for Pilot Employees (Plan) negotiated between Northwest and the Air Line Pilots Association, International, violates the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §§ 621–634 (1988), the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461 (1988), and Subtitle C of Title 9 of the Omnibus Budget Reconciliation Act of 1986.

Appellants' claims revolve around the accrual of benefits under the Plan. An accrued benefit under the Plan is calculated based on a participant's Final Average Earnings and length of service. Specifically, the Plan defines the accrued benefit as:

The product of:

(i) Sixty percent (60%) of the Participant's Final Average Earnings determined as of such date minus the Participant's Social Security Offset[4] determined as of such date; multiplied by,

(ii) A fraction, not greater than one (1), the numerator of which is the Participant's Benefit Accrual Service earned as of such specified date and the denominator of which is twenty-five (25) or, if greater, the sum of the Participant's Benefit Accrual Service earned as of such specified date plus the maximum Benefit Accrual Service the Participant could earn from such specified date to the Participant's Normal Retirement Date.

Plan § 1.2.1(a). The normal retirement age is sixty. Plan § 1.2.21. Prior to January

1, 1988, Northwest did not award credit for service after age sixty. Therefore, a pilot retiring after his normal retirement date would receive a retirement pension calculated as if he retired on his normal retirement day. Plan § 3.1.2.

Congress in 1986 amended the ADEA, ERISA and Internal Revenue Code to require employers to credit employees on their pensions for employment that continued after normal retirement age. Omnibus Budget Reconciliation Act of 1986, Public Law No. 99–509, 100 Stat. 1874, 1973–80 (1986) (hereinafter OBRA). OBRA section 9201 amended the ADEA by providing:

> it shall be unlawful for an employer, an employment agency, a labor organization, or any combination thereof to establish or maintain an employee pension benefit plan which requires or permits—
>
> (A) in the case of a defined benefit plan, the cessation of an employee's benefit accrual, or the reduction of the rate of an employee's benefit accrual, because of age.

29 U.S.C. § 623(i)(1) (West Supp.1992). OBRA section 9202(a)(2) added an analogous provision to ERISA.

> [A] defined benefit plan shall be treated as not satisfying the requirements of this paragraph if, under the plan, an employee's benefit accrual is ceased, or the rate of an employee's benefit accrual is reduced, because of the attainment of any age.

29 U.S.C. § 1054(b)(1)(H)(i) (West Supp. 1992). Northwest amended its Plan to comply with OBRA effective August 28, 1989. Northwest made the portion of its pension Plan providing for the accrual of benefits after normal retirement age retro-

**2.** The FAA periodically has reexamined the age sixty rule, but has always reaffirmed it. The rule has been upheld by circuit courts, *Air Line Pilots Ass'n, Int'l v. Quesada*, 276 F.2d 892 (2d Cir.1960); *O'Donnell v. Shaffer*, 491 F.2d 59 (D.C.Cir.1974), and is not challenged in this appeal.

**3.** In airline parlance, a captain is the pilot and controls the aircraft. The first officer is the co-pilot and assists the captain. The second officer is the flight engineer. The flight engineer moni-

tors a side-facing instrument panel and does not operate flight controls unless the captain and first officer become incapacitated. *Western Air Lines v. Criswell*, 472 U.S. 400, 403, 105 S.Ct. 2743, 2746, 86 L.Ed.2d 321 (1985). In *Criswell*, the Supreme Court ruled that flight engineers could not be subject to mandatory retirement at age sixty. *Id.* at 423, 105 S.Ct. at 2756.

**4.** The social security offset was eliminated for pilots retiring after July 1, 1989, including all appellants.

active to January 1, 1988. Appellants filed suit in district court contending the amendments to the Plan adopted by Northwest continue to violate ADEA, ERISA, and OBRA. The district court granted Northwest's motion for summary judgment on all issues.

## II.

We review the district court's grant of summary judgment de novo. *Boise Cascade Corp. v. Peterson*, 939 F.2d 632, 636 (8th Cir.1991), *petition for cert. filed*, —— U.S. ——, 112 S.Ct. 3014, 120 L.Ed.2d 887 (1991). Summary judgment is proper when there is no issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

### A. Age-related reductions in benefit accruals

■ Appellants contend Northwest's Plan violates OBRA because pilots under age sixty accrue pension benefits at a greater rate than those over sixty. The district court found the Plan non-discriminatory because the difference in accrual of pension payments is caused by the Plan's twenty-five-year service cap and early retirement provisions. *Atkins v. Northwest Airlines, Inc.*, No. 3–89–843, slip op. at 5, 1991 WL 345889 (D.Minn. Aug. 19, 1991).

The benefit Plan negotiated between Northwest and the union is premised on twenty-five years of service. Employees continue to accrue pension benefits until they have worked for twenty-five years. After reaching twenty-five years of service, benefits cease to accrue based on longevity but can continue to increase based on a higher Final Average Earnings. Therefore, if a pilot's Final Average Earnings remained constant, he would accrue pension benefits until he reached twenty-five years of service. After twenty-five years, the pilot would not accrue more pension benefits, regardless of age.

This simple formula, however, is complicated by the Plan's early retirement provisions. These provisions provide the gist of appellants' discriminatory accrual argument. The Plan provides that if a pilot

retires before the normal retirement age of sixty, his monthly pension payments will be reduced to account for the projected longer payment period. The Plan provides that the Early Retirement Pension shall be reduced:

(i) if the benefit is first payable after the Participant has twenty-five (25) or more Years of Vesting Service, by one-fourth of one percent (¼%) for each full month that precedes the last day of the calendar month following the Participant's Normal Retirement Date, or

(ii) in all other cases, by the Early Payment Commencement Factors.

Plan § 3.2.2. Therefore, a pilot who retires at age sixty after twenty-five years of service will receive larger monthly pension payments than a pilot who retires at age fifty-five with twenty-five years of experience and the same Final Average Earnings. This results because the fifty-five-year-old's monthly pension payment is discounted for early retirement. Because of this discounting based on the length of the projected payout period, pilots increase their monthly pension payment each year they postpone early retirement. Nevertheless, the total accrued pension benefit for both pilots would be actuarially identical.

Appellants argue that in order to comply with OBRA, the rate of increase in pension payments for pilots over sixty must increase at the same rate that it increases for pilots under sixty. In other words, at age sixty, the early retirement discount must be inverted into a late retirement bonus to account for the shorter period over which the accrued benefit would be paid. Since a pilot who retires at age sixty-five actuarially will receive payments for a shorter period than a pilot who retires at age sixty, appellants argue the monthly pension payment must be increased to account for the difference.

This may be a valid argument for the bargaining table, but it is not required by ERISA. The negotiated Plan between Northwest and the pilots union caps accrual at twenty-five years of service and provides for an early retirement discount.

Federal law does not forbid early retirement discounts or service caps. *See* 29 U.S.C.A. § 1054(b)(1)(H)(ii), (v) (West Supp. 1992); 29 U.S.C.A. § 623(i)(2), (6) (West Supp.1992); 26 U.S.C. § 411(b)(1)(H)(ii), (iv) (West Supp.1992). It is true that in the case of a pilot with twenty-five years of service and a flat Final Average Earnings, the amount of monthly pension payments would cease to increase at age sixty. This does not, however, result from age discrimination. It merely reflects that the early retirement discount is exhausted. ERISA and ADEA preclude companies from reducing a recipient's accrued benefit because of age. An accrued benefit is not the amount of pension payment a recipient receives by retiring early, it is the amount of pension payment a recipient achieves at normal retirement age. 29 U.S.C. § 1002(23)(A) (West Supp.1992). Therefore, early retirement discounts are not "accrued benefits" under ERISA. *American Stores Co. v. Retirement Plan,* 928 F.2d 986, 990 (10th Cir.1991); *Tilley v. Mead Corp.,* 927 F.2d 756, 759 (4th Cir.1991), *petition for cert. filed,* —— U.S. ——, 112 S.Ct. 3013, 120 L.Ed.2d 886 (1992) (No. 91–356); *Bencivenga v. Western Pa. Teamsters,* 763 F.2d 574, 577 (3d Cir.1985). *Contra Amato v. Western Union Int'l, Inc.,* 773 F.2d 1402, 1414 (2d Cir.1985), *cert. dismissed,* 474 U.S. 1113, 106 S.Ct. 1167, 89 L.Ed.2d 288 (1986). Consequently, the lifting of the early retirement discount at age sixty does not constitute a change or a reduction in an "accrued benefit" under ADEA or ERISA.

### B. Post-sixty actuarial increases

█ Appellants make a similar argument for actuarially increasing the accrued benefits of pilots who reached their sixtieth birthday prior to the OBRA effective date. Northwest defers payment of pensions for those pilots who continue working past normal retirement age. Appellants contend that under pre-OBRA ERISA, Northwest is required to increase actuarially the accrued benefit of certain pilots during the period between those pilots' sixtieth birthday and the OBRA effective date. Appellants argue that this increase is required to account for the shorter period over which pension benefits will be paid. In other words, since a pilot who retires at age sixty-five actuarially will receive benefits for fewer years than a pilot who retires at sixty, the benefits of the sixty-five-year-old retiree must be actuarially increased by Northwest in order to maintain the same final payout. Northwest's failure to do this, appellants argue, acts as a forfeiture of accrued benefits and violates § 203(a), 29 U.S.C.A. § 1053(a) (West Supp.1992).

ERISA allows an employer to defer pension payments until a recipient actually retires. 29 U.S.C.A. § 1056(a)(3) (West Supp. 1992). ERISA does not require an actuarial increase in benefits to compensate for the period after normal retirement age that payment of the benefits is deferred because the recipient continues to work. Section 203(a)(3)(B) provides:

> A right to an accrued benefit derived from employer contributions shall not be treated as forfeitable solely because the plan provides that the payment of benefits is suspended for such period as the employee is employed, subsequent to the commencement of payment of such benefits.

29 U.S.C.A. § 1053(a)(3)(B) (West Supp. 1992). Appellants contend this provision applies only to persons who have retired, started receiving pension benefits, and then resumed work. The Department of Labor, however, has interpreted this provision to include persons who have continued to work past retirement age and, therefore, have never started receiving benefits.

> [T]he employment of an employee, subsequent to the time the payment of benefits commenced or would have commenced if the employee had not remained in or returned to employment, results in section 203(a)(3)(B) service.

29 C.F.R. § 2530.203–3(c)(1) (1991). Section 203(a)(3)(B) refers to the period of suspension that the employee is employed "subsequent to the commencement of such benefits." 29 U.S.C.A. § 1053(a)(3)(B) (West Supp.1992). On its face, it is unclear whether the statute refers strictly to employees who were re-employed after the commencement of benefits, or whether it

refers also to employees who remained employed after pension eligibility began. The Department of Labor interpreted the statute to include both types of employees. Since we find the statute ambiguous, we must accede to a permissible construction of the statute by the Department. *Chevron U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984).

Moreover, ERISA itself indicates that pension benefits need not be actuarially increased for service performed after the normal retirement date. ERISA provides that any actuarial increase in benefits during the delay caused by continued work may be used to offset the statutorily mandated continued accrual of retirement benefits past retirement age. 29 U.S.C.A. § 1054(b)(1)(H)(iii)(II) (West Supp.1992). In other words, if a plan actuarially increases a recipient's accrued benefit on account of the delayed payment, the plan may offset its normal accrual by a like amount. If the actuarial increase is used to satisfy the statutorily compelled accrual, it ceases to be an actuarial increase. ERISA clearly recognizes this. Therefore, the Plan's failure to actuarially increase benefits to account for the delay in receiving benefits does not constitute a forfeiture of benefits under ERISA § 203(a), 29 U.S.C.A. § 1053(a) (West Supp.1992).

### C. Effective date of amendment

The amendments required by OBRA became effective January 1, 1988. OBRA § 9204. OBRA, however, provided for deferred implementation of its provisions for certain collectively bargained plans. In the case of plans maintained pursuant to one or more collective bargaining agreements ratified before March 1, 1986, the effective date shall be the later of: (1) January 1, 1988, (2) the date on which the last of such collective bargaining agreements terminate, or (3) January 1, 1990. *Id.*

Northwest amended the Plan to comply with OBRA effective August 28, 1989. The portion of the amendment providing for the accrual of benefits after normal retirement age was made retroactive to January 1, 1988.

Appellants contend that Northwest was not entitled to the deferred implementation provisions of OBRA. Therefore, appellants argue, the accrual of benefits between January 1, 1988, (the OBRA effective date) and August 28, 1989, (the amendment's effective date) should have been computed under the prior Plan formula, without regard to the provisions of the Plan made unlawful by OBRA. In cases where implementation of benefits under the amendment during this time period produced a smaller accrued benefit than would have been achieved under the unamended Plan, appellants argue they are entitled to the higher amount.

Appellants argue Northwest was not entitled to the deferral provision because the company presented no evidence that the collective bargaining agreement was ratified before March 1, 1986. Despite appellants' argument, there is no serious question that the Plan was final and effective for all relevant times and well before 1986. Although there may have been no specific evidence introduced to show ratification, we agree that "Congress inserted this language to distinguish finalized and effective plans from proposed plans.... [T]here is no reason to believe Congress intended anything more specific than some form of formal validation and approval, the plain meaning of ratification." *Puckett v. United Air Lines, Inc.,* 705 F.Supp. 422, 425 (N.D.Ill.1989).

Northwest's Plan was a collective bargaining agreement, which was not subject to natural expiration. Plan § 9. Therefore, so long as the Plan was ratified before March 1, 1986, Northwest had until January 1, 1990, to implement the amendments. Northwest amended the agreement effective August 28, 1989, and made the post-sixty benefit accrual provisions retroactive to January 1, 1988. Northwest was in full compliance with OBRA's implementation requirements and, therefore, as a matter of law, appellants are not entitled to compute pension benefits under pre-OBRA

law for the time period between August 28, 1989, and January 1, 1988.

**D. Reduction in Final Average Earnings**

■ Appellants claim that Northwest illegally reduced certain pilots' pension accrual in two ways. First, appellants contend Northwest reduced the pension accrual of some pilots by allowing their accrued benefit to decrease as a result of a lowering of their Final Average Earnings after they reached age sixty. The FAA's age sixty rule requires pilots who wish to remain in the cockpit past age sixty to become flight engineers. Pilots who choose to remain working as flight engineers receive a decrease in pay, reflecting the wage-scale change from captain or first officer to flight engineer. As a result, a pilot who works past age sixty may see his Final Average Earnings drop with a corresponding effect on his accrued benefit. Northwest's policy, however, is to maintain an accrued benefit that never dips below the accrued benefit achieved at normal retirement age. A pilot who works past age sixty may have an accrued benefit that increases to a level beyond that reached at normal retirement age, only to find that the accrued benefit may fall again due to a lower Final Average Earnings. Although the accrued benefit will never fall below the level reached at normal retirement age, appellants contend that any drop in an achieved level of accrued benefits constitutes age discrimination in violation of ERISA.

Second, appellants contend Northwest illegally withheld income from certain pilots' Final Average Earnings. In 1983, Northwest settled a lawsuit brought by some pilots challenging the airline's mandatory retirement age of sixty. In addition to reinstatement, settling pilots received back pay awards. Northwest initially credited these back pay payments toward pension earnings but later removed them from the pension calculation. Appellants contend Northwest's refusal to credit the back pay awards in pension calculation gives settling pilots a lower Final Average Earnings and decreases their pension accrual.

The district court dismissed both claims without prejudice under Fed.R.Civ.P. 8(a)(2), which requires that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A dismissal without prejudice under Rule 8 is within the sound discretion of the trial court. *Mangan v. Weinberger,* 848 F.2d 909, 911 (8th Cir.1988), *cert. denied,* 488 U.S. 1013, 109 S.Ct. 802, 102 L.Ed.2d 793 (1989); *Gillibeau v. City of Richmond,* 417 F.2d 426, 431 (9th Cir. 1969).

First, nothing in the complaint remotely avers to Northwest's failure to include the 1983 back pay settlement awards into pension calculations. Second, appellants rely on the following statement from paragraph 17 of their complaint as stating a claim for relief on the issue of reduction of benefits on account of a reduced Final Average Earnings. "[T]he Northwest defendants have reduced and forfeited the accrued benefits of plaintiffs and others similarly situated who have been employed by Northwest beyond age 60." The district court ruled that the complaint failed to allege any claims beyond those allegations averred elsewhere in the complaint by appellants. We agree. The statement highlighted by appellants is merely a catch-all to describe several of their various claims. It in no way puts defendants on notice of the specific Final Average Earnings reduction claim. We find the district court did not abuse its discretion in dismissing without prejudice appellants' claims.

**III.**

For the foregoing reasons, the district court's grant of summary judgment to Northwest is affirmed. The dismissal of claims without prejudice under Fed. R.Civ.P. 8(a)(2) is affirmed.