In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-3637

GRANT M. WALKER, individually and on
behalf of all others similarly situated, et al.,

*Plaintiffs-Appellants,*

*v.*

MONSANTO COMPANY PENSION PLAN, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 3:04 C 00436—**J. Phil Gilbert**, *Judge.*

ARGUED APRIL 20, 2010—DECIDED JULY 30, 2010

Before BAUER, FLAUM, and EVANS, *Circuit Judges.*

FLAUM, *Circuit Judge.*   This is a class action lawsuit
challenging the manner in which certain credits accrue
in the Monsanto Company's pension plan as inconsistent
with a provision of the Employee Retirement Income
Security Act ("ERISA"), 29 U.S.C. § 1054(b)(1)(H)(i),
which prohibits defined benefit plans from ceasing or
reducing an employee's benefit accrual because of the

attainment of any age. Finding that the employees' rate of benefit accrual does not decrease because of age, we affirm the district court's grant of summary judgment to the defendants.

## I. Background

This case has its origins in a 1997 restructuring of Monsanto Company's pension plan.[1] Monsanto converted its classic defined benefit plan into a "cash balance plan." In a typical defined benefit plan, participants' benefits are described as an annuity to be paid at regular retirement age. Under a cash balance plan, each participant has a hypothetical account that represents the value of his or her pension benefit as a lump sum (some, but not all, plans give participants the option of taking this lump sum at retirement rather than receiving annuity payments). The account is hypothetical because plan participants do not actually have individual accounts. Instead, all of the plan's assets are held in trust for all participants, and the employer is responsible for ensuring that the assets are sufficient to pay the promised benefits. ERISA treats cash balance plans as a type of defined benefit plan.

---

[1] After the pension plan was restructured, Monsanto split into three separate corporations: Pharmacia Corporation, Solutia Inc., and a newly-created Monsanto Company. The district court certified three separate classes, one for each of the corporate spin-offs. Because the plans remain identical in all relevant respects, we do not distinguish among the plans or defendants, and refer to the defendants collectively as "Monsanto."

As part of the 1997 conversion, Monsanto established two different cash balance accounts for each of its employees. One account was intended to reflect only new benefits earned after conversion. The second was intended to preserve the age-65 benefits that employees had already earned at the time of conversion. Only the second account, called the "Prior Plan Account" or "PPA," is at issue in this case.

Prior to conversion, the Monsanto retirement plan was not wholly standardized, meaning that the retirement options of individual employees varied. First, all employees earned an age-65 retirement benefit, which was expressed as a monthly annuity beginning at age 65. For example, an employee who retired at age 55 might be entitled to receive a $1,000 monthly annuity beginning at age 65 until she died. Second, some of the prior plans provided a discounted early retirement option to employees. These employees could begin receiving annuity payments as early as age 55, although the payments would be discounted by 3% for each year that the employee's age was less than 65 to reflect the longer time of payment. Finally, some of the prior plans provided for a subsidized early retirement option. Eligible employees could begin receiving their full age-65 benefit as early as age 55, without taking a discounted monthly payment.

The new PPA accounts were designed to preserve each employee's age-65 accrued balances, while standardizing the early retirement options of Monsanto employees. First, the PPA extended to all employees the right to begin receiving full age-65 payments as early

as age 55 (the most generous of the old early retirement options). Second, the new plan gave all employees the opportunity to begin receiving benefits even before age 55. If an employee chose this option, his or her benefit would be discounted by 8.5% per year for each year the participant was younger than age 55. It is the mechanism through which this discount was implemented that is at the center of this lawsuit.

To calculate the opening balance of each participant's PPA, Monsanto applied a conversion formula by which the account was "credited with an amount equal to the Actuarial Equivalent lump sum value of the Participant's Predecessor Plan Accrued Benefit . . . discounted using an interest rate of eight and one-half percent per annum for each month, if any, by which the Participant's age as of January 1, 1997 precedes age 55." (Plan § 6.2(b)). In other words, each employee's benefit under the old plan, which had been expressed as an annuity, would be converted to a lump sum equivalent to the cost of that annuity. That lump sum would then be discounted by 8.5% per year for each year younger than 55 the employee was at the time of conversion.

Once established, each individual's PPA increases by way of two monthly "credits": "pay credits" and "interest credits." Pay credits, which are intended to reward employees for the length of their service, are equal to the current PPA balance multiplied by the monthly equivalent of 4% per annum. Employees continue to receive pay credits as long as they work for Monsanto, regardless of age. Interest credits are equal to the current PPA

balance multiplied by the monthly equivalent of 8.5% per annum. Interest credits cease once "the Participant attains age 55." (Plan § 6.2(d)).

In mid-1996, before the effective date of the plan conversion, Monsanto distributed literature to employees to explain the new plan. These communications explained that the 8.5% discount applied to the initial balance of employees younger than 55 and the corresponding 8.5% credits then applied until age 55. Each of these communications described the 8.5% discount as an early retirement benefit and the 8.5% interest credits as necessary to restore the full previously accrued benefit to employees.

On June 23, 2004, plaintiffs filed *Walker v. Monsanto Company Pension Plan*, No. 04-436, in the Southern District of Illinois. On September 1, 2006, the district court entered an order consolidating the *Walker* action with three related actions: *Davis v. Solutia, Inc. Employees' Pension Plan*, No. 05-736 (filed October 12, 2005); *Donaldson v. Pharmacia Pension Plan*, No. 06-3 (filed January 3, 2006); and *Hammond v. Solutia, Inc. Employees' Pension Plan*, No. 06-139 (filed February 15, 2006). The consolidated complaint alleges, among other things, that the substantively identical cash balance defined benefit plans violate ERISA's prohibition on ceasing or reducing an employee's benefit accrual because of the attainment of any age.

On May 22, 2008, the district certified three identical "Age 55 Cut-off claims." On June 11, 2009, the district court granted defendants' motion for summary judgment

on the Age-55 Cut-off claims and denied plaintiffs' cross-motion for summary judgment on those same claims. After additional proceedings in which the plaintiffs prevailed on an unrelated claim (not challenged on appeal), the district court entered final judgment disposing of all claims with respect to all parties on September 29, 2009. Plaintiffs timely appealed.

## II. Discussion

Plaintiffs' argument is that the plan violates ERISA on its face. First, they argue that the interest credits are part of a participant's "benefit accrual" because they are an input credited by the employer to the participant's stated account balance. Second, they argue that the express terms of the plan terminate this benefit when a participant reaches age 55.

ERISA prohibits defined benefit plans from reducing "an employee's rate of benefit accrual . . . because of the attainment of any age." 29 U.S.C. § 1054(b)(1)(H)(i). As an initial matter, then, we must address whether interest credits, which are intended to reverse the 8.5% per annum discount applied to employees' opening balances, constitute "benefit accrual."

ERISA does not define the phrase, "benefit accrual." However, we have considered its meaning previously. *See Cooper v. IBM Personal Pension Plan*, 457 F.3d 636 (7th Cir. 2006). In *Cooper*, the defendant, IBM, ran a cash balance pension plan that operated in a manner similar to a defined contribution plan. Each employee received a 5% pay credit (based on the employee's current salary)

and an interest credit (equal to 1% above the Treasury rate multiplied by the account's balance) each year. Interest credits continued to accrue until retirement age, whether or not the participant ceased working for the company. At retirement, an employee could either take the balance as cash or roll it over into an annuity. *Id.* at 637. The plaintiffs in *Cooper* alleged that this plan discriminated against older workers. Because a younger worker would receive more years of interest before retirement, a year of service at age 35 would increase an employee's total accrued benefit more than a year of service (at the same salary) at age 55. We rejected the *Cooper* plaintiffs' arguments, noting that it "treats the time value of money as age discrimination." *Id.* at 638. Instead, we held that "benefit accrual" addresses "the rate at which value is added (or imputed) to an account, rather than the annual pension at retirement age." *Id.* at 639. In reaching this decision, we relied on the fact that IBM's method of crediting retirement accounts would certainly have been permissible for a defined contribution plan. *Id.* at 638; *see also* 29 U.S.C. § 1054(b)(2)(A) (requiring that, for defined contribution plans, "allocations to the employee's account are not ceased, and the rate at which amounts are allocated to the employee's account is not reduced, because of the attainment of any age."). Finally, we noted that a draft Treasury regulation acknowledged that for cash balance plans that operated in a manner similar to a defined contribution plan, "benefit accrual" should be treated as "the additions to the participant's hypothetical account for the plan year." *Cooper*, 457 F.3d at 639; *see also* 67 Fed. Reg. 76,123, 76,125 (Dec. 11, 2002).

Plaintiffs argue that in *Cooper*, we adopted a bright-line rule that any credit to a participant's cash balance account amounts to benefit accrual. Since the interest credits here increase the stated cash balance, they argue, they must be benefit accruals. Defendants, on the other hand, argue that the interest credits cannot be benefit accruals because they do not increase the total "accrued benefit"—the amount of the annuity to which the employee is entitled at normal retirement age. *See Cooper*, 457 F.3d at 638; 29 U.S.C. § 1002(23)(A).

The disagreement stems from the flexible nature of cash balance plans. The most common type of cash balance plan operates in a manner similar to a defined contribution plan, as did the plan at issue in *Cooper*. *See also Berger v. Xerox Corp. Retirement Income Guarantee Plan*, 338 F.3d 755, 757 (7th Cir. 2003) (describing a cash balance plan that "resembles" a defined contribution plan). For these cash balance plans, which pay participants a yearly interest rate on their plan balances, we must look to "the additions to the participant's hypothetical account for the plan year" to avoid treating compound interest as age discrimination. *See Cooper*, 457 F.3d at 639 (quoting 67 Fed. Reg. at 76,126). But plaintiffs point to no requirement that a cash balance plan operate in this way. The plan at issue in this case instead mimics a defined benefit plan (likely because it was intended to preserve the benefits already earned by employees under Monsanto's old defined benefit plan). Participants are promised a certain benefit at retirement, which is described as a lump-sum cash balance. Because this is not an "eligible cash balance plan," *see* 67 Fed. Reg. at

76,125, the general mechanism for determining benefit accrual applies—"the increase in the participant's accrued normal retirement for the benefit year." *Cooper*, 457 F.3d at 639 (quoting 67 Fed. Reg. at 76,125). The draft Treasury Regulation makes clear that this general method may be used by all defined benefit plans (including cash balance plans); it is only the method used in *Cooper* that is limited to certain qualifying cash balance plans. 67 Fed. Reg. at 76,125 (stating that the general rule "may be used by all defined benefit plans" while the "second approach may be used only by an eligible cash balance plan").

One might wonder how these two mechanisms can coexist. The reason is that while retirement plans are prohibited from discriminating against older workers, they are not prohibited from favoring them. Traditional defined benefit plans and the cash balance plans that mimic them treat younger workers less favorably than older workers. These plans do not address the fact that an employer will have to save more to pay out a particular accrued retirement benefit for an older worker (who is close to retirement, giving the employer less compound interest on the savings) than to pay that same benefit to a younger worker (who is further from retirement, allowing the employer to earn more compound interest on the savings). *See Cooper*, 457 F.3d at 639 (noting that traditional defined benefit plans favor older workers). Imagine two workers who, for a given year, both earn an identical increase in their monthly annuity at retirement. If one worker is at retirement age, the employer will have to set aside the full value of that annuity immediately. But for a young worker, the present value of the annuity

is significantly less, because setting aside a smaller amount of money to earn interest for several years will suffice to pay the benefit. Because a plan that increases the accrued benefit at retirement equally for young and old workers actually favors the older workers, treating the "rate of benefit accrual" as "the increase in the participant's accrued normal retirement benefit for the year" will never mask age discrimination where it exists.

Looking at the rate of increase in the participant's accrued normal retirement benefit, it becomes clear that the interest credits here are not benefit accruals. This is because they never increase the accrued benefit at retirement. Imagine, for example, a 50-year-old employee who accrued prior to conversion a retirement benefit worth $1,000 per month at normal retirement age. Further assume the value of this benefit as a lump sum is $125,000. Under the new plan, the employee would be entitled to collect this benefit at age 55. This $125,000 lump sum is discounted at the rate 8.5% for the five years left before the worker reaches age 55. In 1997, at age 50, her account balance would be $83,131.[2] But if she retired at age 50 and waited to receive her benefits until age 55, she would receive five years of interest on that

---

[2] Assuming that interest is compounded annually, the discounted opening balance is arrived at by dividing the lump-sum accrued benefit by 1.085 (one plus the interest rate) raised to the fifth power (the number of years of discounting).

balance, resulting in a lump sum of $125,000.[3] At age 51, her account balance would increase by 8.5%, or $7,066, to $90,197. But if she retired at age 51 and waited until normal retirement age to collect her benefit, she would receive four more years of interest credits, again resulting in a balance of $125,000. And if she worked beyond age 55, her accrued benefit would remain at $125,000 (in the PPA account—remember that she would continue to earn new benefits, but these are tracked in a separate account). Viewed as the increase in her accrued benefit at normal retirement age, the hypothetical employee's rate of benefit accrual is zero, both before and after reaching age 55.[4] The only time the value of the

---

[3] The value of the age 50 balance at age 55 is arrived at by multiplying the discounted opening balance by 1.085 (one plus the interest rate) raised to the fifth power (the number of years remaining until she reaches age 55 and is eligible for the full retirement benefit).

[4] This hypothetical is a simplification, because it ignores the 4% annual "pay credit," which continues to accrue as long as the plan participant works for Monsanto. Plaintiffs argue that even if the 8.5% interest credits would not otherwise be benefit accruals, they become benefit accruals because they also apply to the 4% pay credit. This argument fails as a matter of mathematics. The 4% pay credit applies to balance of the PPA account, which for workers under age 55, has already been discounted at a rate of 8.5% per year. Applying the 4% pay credit for each new year of service to the discounted cash balance is equivalent to applying the pay credit for each new year of service to the accrued benefit and then

(continued...)

account at retirement would be different than $125,000 is if the employee began receiving payments before age 55—in other words, if she took advantage of the discounted early retirement option provided by Monsanto. Plaintiffs' argument, if adopted, would treat all discounted early retirement programs as violations of § 1054(b)(1)(H)(i).

In this respect, plaintiffs' argument is quite similar to the argument rejected by the Eighth Circuit in *Atkins v. Northwest Airlines, Inc.*, 967 F.2d 1197 (8th Cir. 1992). In *Atkins*, the defendant airline's retirement plan offered a normal retirement benefit to pilots at age 60 and an early retirement benefit that was discounted for pilots younger than 60. Because of the discounting, the monthly

---

[4] (...continued)

discounting the accrued benefit to a cash balance. An example may be helpful. If we include the pay credits, at age 51 our hypothetical employee's cash balance account will have increased to $93,805: $83,131 (the initial balance) plus $3,325 (the pay credit) plus $7,349 (the interest credit on the sum of the initial balance and the pay credit). This results in an age-55 benefit of $130,000 ($93,805 times 1.085 to the fourth power). Alternately, one could apply a 4% pay credit to the age-55 balance of $125,000. This equals an accrued benefit of $130,000; discounted by the four years remaining until age 55, this yields a cash balance of $93,805 ($130,000 divided by 1.085 to the fourth power). Thus, at any time, the only increase in the value of an employees' cash balance or accrued benefit is solely attributable to the 4% pay credits, which do not cease upon reaching any age.

benefit of pilots who did not take early retirement would appear to increase each year that they postponed receipt of their benefits (as each passing year meant one less year of discounting for early payment); but at age 60, the increases ceased, as the pilot was then entitled to the full retirement benefit.[5] The pilots argued that when the airline ceased giving them increases to reverse the early retirement discount, it had ceased their benefit accrual on account of age and thereby violated 29 U.S.C. § 1054(b)(1)(H)(i). The Eight Circuit rejected this argument, noting that ERISA permits early retirement discounts and holding that because they do not affect the pension payment a retiree receives at normal retirement age, the reversal of early retirement discounts are not "accrued benefits" under ERISA. 967 F.2d at 1201.

Plaintiffs' attempts to distinguish *Atkins* are unavailing. They argue that unlike *Atkins*, this case involves neither a service cap nor an early retirement feature. They do not explain why the presence of a service cap makes any difference, and we see none. Their claim that the plan at issue here does not include an early retirement benefit is misleading. We have already explained why the mecha-

---

[5] The perceived inequality was exacerbated in *Atkins* because the airline also had a service cap of 25 years (which is permitted under ERISA). A pilot who reached 25 years of service before age 60 would see his "benefit" increase each year until he reached 60 as the early retirement discount phased out, but a pilot who reached 25 years of service after 60 would see no increase after the 25th year (because no early retirement discount would apply to his payment).

nism of discounting the opening cash balance of employees under age 55 and then crediting back that discount until the employee reaches age 55 functions like an early retirement discount, never changing the accrued benefit at normal retirement age but reducing the benefit if employees choose to receive payment early. Plaintiffs object to the characterization of the 8.5% interest credits as a reversal of the earlier 8.5% discounting; they dismiss it as "mathematically convenient" but unfounded because there is no cross-reference between Section 6.2(b) of the plan, which discounts the opening balance, and Section 6.2(d), which describes the interest credits. This argument is spurious. Whether or not there is a cross-reference, the concrete result of applying the two formulas is that a participant's accrued benefit never changes. Moreover, it is undisputed that this mechanism was described to employees as the way the discounted early retirement feature was being implemented. The only evidence plaintiffs cite in support of their claim that the 8.5% interest credits were not part of a discounted early retirement option is an excerpt from a 2002 submission to the IRS in which Monsanto indicated that there is no early retirement benefit formula in the plan. This statement was correct—because the early retirement discount was built into the opening balance of the PPA accounts, there is no separate early retirement formula in the plan. In any event, it is irrelevant to this appeal whether the discount and subsequent credits are described as an early retirement discount or not. The applicable statute makes no mention of early retirement discounts but rather asks whether a participant's rate of

benefit accrual ceases or is reduced on account of reaching a certain age. 29 U.S.C. § 1054(b)(1)(H)(i). Like the credits to reverse the early retirement discounts in *Atkins*, the interest credits here have no impact on the accrued benefit at normal retirement age and therefore have no effect on an employee's rate of benefit accrual.

Plaintiffs' final argument is that the Monsanto plan works an "impermissible forfeiture" by not extending the interest credits to age 65. Citing IRS Notice 96-8 and Revenue Ruling 2008-7, they argue that all cash balance plans must add any "interest" through a plan's normal retirement age. *See* Rev. Rule 2008-7, 2008-7 I.R.B. 419, 2008 WL 274325 ("[I]n determining the accrued benefit of a participant under a cash balance plan at any time prior to normal retirement age, the balance in the cash balance plan must be projected with interest credits to normal retirement age."); Notice 96-8, 1996-8 I.R.B. 23, 1996 WL 17901 ("Under a cash balance plan, the retirement benefits payable at normal retirement age are determined by reference to the hypothetical account balance as of normal retirement age, including benefits attributable to interest credits to that age.") These regulations do not help plaintiffs' cause. The notice and revenue ruling provide only that when a plan promises interest credits prior to normal retirement age that are not conditioned on future employment, then the plan must include the value of the interest credits when converting an employee's accrued benefit to an immediately payable lump sum. *See Cooper*, 457 F.3d at 640 (Notice 96-8 requires that "a plan must . . . add all the interest that would accrue through age 65, then . . . discount the resulting sum to its

present value."); *see also Fry v. Exelon Corp. Cash Balance Pension Plan*, 571 F.3d 644, 645 (7th Cir. 2009) (in calculating lump-sum distributions, pension plans were required to "start with the current balance and add any contractually promised interest (or any other form of guaranteed increase in benefits) through the employee's 'normal retirement age'" before discounting them to a present value). These regulations follow from the principle that a lump-sum substitute for an accrued pension benefit must be the "actuarial equivalent" of that benefit. *See* 29 U.S.C. § 1054(c)(3); *Berger*, 338 F.3d at 759. Thus, promised future interest credits that increase the accrued benefit must be included when calculating the lump sum paid to someone who chooses to take their benefit before regular retirement age. *Id.* at 760. We have already explained that the interest credits here, unlike those at issue in *Berger*, do not increase the accrued benefit at normal retirement age. But plaintiffs' argument also fails at a more fundamental level. They are not arguing that the plan forfeits retirement-age benefits when a participant elects to take a lump-sum payment early; rather, they seek to *increase* the retirement-age benefit by requiring interest credits through age 65.[6] But

---

[6] In particular, plaintiffs do not claim that the 8.5% early retirement discount rate from age 55 works an impermissible forfeiture by understating that present value of the participant's accrued benefit at normal retirement age. *Cf. Berger*, 338 F.3d at 759 ("[Plaintiffs] contend that the amount they received was not the actuarial equivalent of what they would

(continued...)

the regulations do not prescribe what benefit a plan must promise a participant at retirement age. They only require that a participant receive the actuarial equivalent of that benefit if the participant takes a lump-sum payment early. Notice 96-8 and Revenue Ruling 2008-7 are thus wholly irrelevant to plaintiffs' claims.

### III. Conclusion

We AFFIRM the district court's grant of summary judgment to the defendants.

---

[6] (...continued)
have received either as an annuity or a lump sum had they waited until age 65."); *see also* 29 U.S.C. § 1053(f) (no impermissible forfeiture when the present value of the accrued benefit is, under the terms of the plan, equal to the amount expressed as the balance in the cash balance account).

---